```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____           │
│ DATE FILED: __  8/10/2020        │
└─────────────────────────────────┘
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

YUEFENG SHI, on behalf of himself and others
similarly situated,

                               **Plaintiff,**

                -against-

TL & CG INC., et al.,

                             **Defendants.**

-------------------------------------------------------------X

                                          **19-CV-08502 (SN)**

                                      **OPINION & ORDER**

**SARAH NETBURN, United States Magistrate Judge:**

      Plaintiff Yuefeng Shi, a former deliveryman for corporate Defendant TL & CH Inc. d/b/a

Han Sushi ("Han Sushi" or the "Corporate Defendant") sues Han Sushi and owner/operators

Guoyong Chen a/k/a Guo Yong Chen, Quoquing Chen, a/k/a Quo Quing Chen, a/k/a Peter Chen,

Jian Xiang Yang, a/k/a/ Jianxiang Yang, and Yi Nen Chen a/k/a Yinen Chen (the "Individual

Defendants"). He alleges that Defendants failed to pay Plaintiff and other similarly situated

employees at an overtime rate for all hours worked in excess of 40 hours per work week and

failed to pay the applicable minimum wage for all hours worked in violation of the Fair Labor

Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), and New York Labor Law § 650 *et seq.*

("NYLL"). Plaintiff also alleges that Defendants violated the FLSA and NYLL by failing to

compensate his out-of-pocket expenses for tools of the trade and by failing to provide a wage

notice at time of hire. In April 2020, he amended the complaint to name the Individual

Defendants who were previously identified as John Doe 1, John Doe 2, and Peter Doe. See

Amended Complaint, ECF No. 40 ("Am. Compl").

Plaintiff moves for conditional certification of a FLSA collective action pursuant to 29 U.S.C. § 216(b), for all non-managerial employees of Defendants employed from September 12, 2016, three years from when the complaint was filed, to the present. Plaintiff also seeks authorization to send a proposed notice to all potential collective members. Defendants oppose Plaintiff's motion. ECF No. 50. The motion is GRANTED in part.

## BACKGROUND

### I.  Factual Background

The following facts are taken from the amended complaint and Plaintiff's affidavit submitted in support of this motion. ECF Nos. 40, 33-4. Plaintiff worked at Han Sushi from February 20, 2018, to October 4, 2018, and again from November 21, 2018, to July 30, 2019, as a deliveryman. ECF No. 33-4 ("Shi Aff.") ¶ 2 (p. 1).[1] He was hired and paid by Defendant Quoquing Chen, a/k/a Quo Quing Chen, a/k/a Peter Chen. Id. ¶ 4 (p. 1); Am. Compl. ¶ 14.

From around November 21, 2018, to July 30, 2019, Plaintiff regularly worked more than 50 hours per week. Shi Aff. ¶ 6 (p. 1-2). He was promised a daily rate of $50 per day but was paid only $45 per day. Id. ¶¶ 7-8 (p. 2). From around February 20, 2018, to October 4, 2018, and again from around November 21, 2018, to around July 30, 2019, he was paid a flat rate of $225 per week. Id. ¶ 9 (p. 2). He was not paid overtime wages for overtime work and was never informed of his hourly pay rate or any tip deductions. Id. ¶¶ 11-12 (p. 2). Plaintiff was not given weekly wage statements in Chinese, his native language. Id. ¶ 12 (p. 2-3). He was also not paid a "spread of hours" premium as required by New York Law or reimbursed for tools of the trade expenses. Id. at ¶¶ 14-16 (p. 3).

---

[1] The Shi Affidavit repeats paragraph numbers. The Court includes the page number for the relevant paragraph to avoid confusion.

Plaintiff claims that his tipped and non-tipped co-workers—including other deliverymen, servers, chefs/cooks, and dishwashers—were also denied overtime pay and minimum wages for all hours worked in excess of 40 hours per workweek. Id. ¶ 17 (p. 3). Plaintiff states that he is familiar with another deliveryman named Chang who worked the same schedule and was paid the same flat rate as Plaintiff. Id. ¶¶ 10-17 (p. 4-5). Plaintiff is also familiar with a deliveryman named Shan who worked a different schedule from Plaintiff but was paid the same flat rate as him. Id. ¶ 18-25 (p 5-6). Plaintiff is familiar with two servers, one named Ah Ming and one who is not named. Ah Ming chatted with Plaintiff and reported that both he and the unnamed server were paid flat compensation and denied tips. Id. ¶¶ 10-21 (p. 6-7). Plaintiff is also familiar with other, non-tipped workers—an unnamed sushi bar worker, unnamed kitchen worker, unnamed dishwasher, and dishwasher/food preparer called "Amigo"—whose wages he does not know but who all allegedly worked more than 40 hours per week. Id. ¶¶ 22-40 (p. 7-9).

## DISCUSSION

### I.   Conditional Collective Action Certification

#### A.  Standard for Conditional Collective Action Certification

A plaintiff may seek certification to proceed as a collective action under the FLSA to allow other "similarly situated" employees to join the litigation. 29 U.S.C. § 216(b); see also Cohen v. Gershon Lehrman Grp., Inc., 686 F. Supp. 2d 317, 326 (S.D.N.Y. 2010). Where appropriate, district courts may implement this provision by "facilitating notice to potential plaintiffs to the pendency of the action." Myers v. Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010). Orders authorizing such notice are often referred to as orders "certifying" a collective action. Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010). Certification, however, is a term of art. Rather than creating a class of plaintiffs for a collective

action, it serves as a "case management tool" to facilitate notice to potential class members. Myers, 624 F.3d at 555 n.10. FLSA does not define the term "similarly situated." Still, it is widely recognized that the standard for conditional collective action certification is not a stringent one. Spicer v. Pier Sixty LLC, 269 F.R.D. 321, 336 (S.D.N.Y. 2010); Iglesias-Mendoza v. La Belle Farm. Inc., 239 F.R.D. 363, 368 (S.D.N.Y. 2007); Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997).

Courts in this Circuit apply a two-step analysis to determine whether to certify a collective action. The first step requires a "modest factual showing" that the putative collective members were "victims of a common policy or plan that violated the law." Korenblum v. Citigroup, Inc., 195 F. Supp. 3d 475, 479 (S.D.N.Y. 2016) (citing Myers, 624 F.3d at 555). The plaintiff's burden at this stage is necessarily a "low standard of proof." McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 443 (S.D.N.Y. 2012) (citations omitted). Courts do not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations" at this stage. Diaz v. New York Paving Inc., 340 F. Supp. 3d 372, 382 (S.D.N.Y. 2018) (citing Lynch v. United Servs. Auto Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)); Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 662 (S.D.N.Y. 2013) ("In ascertaining whether potential opt-in plaintiffs are similarly situated, courts should not weigh the merits of the underlying claims.").

A plaintiff may present evidence of a common policy through pleadings, affidavits, and declarations, including any hearsay statements contained therein. Chhab v. Darden Restaurants, Inc., No. 11-CV-8345 (NRB), 2013 WL 5308004, at *9 (S.D.N.Y. Sept. 20, 2013). Though their evidentiary burden is low, plaintiffs cannot rely on unsupported assertions or conclusory allegations. Sanchez v. JMP Ventures, L.L.C., No. 13-CV-7264 KBF, 2014 WL 465542, at *1

4

(S.D.N.Y. Jan. 27, 2014). As such, to certify a collective of employees with different job functions, courts often require "concrete facts evidencing a common scheme or plan of wage and hour violations." Mata v. Foodbridge LLC, No. 14-CV-8754 (ER), 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015).

At the second step, the court will determine on a fuller record and following notice to the collective, whether the opt-in plaintiffs are "similarly situated" to the named plaintiffs. Meyers, 624 F.3d at 555. If the record shows that they are not, the conditional collective can be "de-certified" and the opt-in plaintiffs' claims dismissed without prejudice. Id.

### B. Plaintiff's Factual Showing in Support of Conditional Certification

Plaintiff seeks conditional certification for a broad class of workers that includes "ALL current and former non-exempt and non-managerial employees employed at any time from September 12, 2016 to the present within 21 days of the entry of the order." Plaintiff's Motion for Conditional Certification, ECF No. 32 ("Pl.'s Mot."), 1-2 (emphasis in original); Declaration of John Troy, ECF No. 33, ¶ 2.

Plaintiff has made the required, modest factual showing that other deliverymen employed by Defendants are similarly situated. The named Plaintiff states that he worked side-by-side with two other deliverymen and that, like him, they were paid at a flat rate of $45 per week. Shi Aff. ¶¶ 17 (p. 3-4), 10-25 (p. 4-6). Based on these assertions, the Court "may infer that other deliverymen worked similar shifts for comparable pay, thereby suffering the same violations of the FLSA." Weng v. Kung Fu Little Steamed Buns Ramen Inc., No. 17-CV-273 (LAP), 2018 WL 1737726, at *3 (S.D.N.Y. Mar. 26, 2018) (quoting She Jian Guo v. Tommy's Sushi Inc., No. 14-CV-3946 (PAE), 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014)) (internal quotation marks omitted). See also Mendoza v. Asiya Sushi 5, Inc., No. 12-CV-8628 (KPF), 2013 WL

5211839, at *4 (S.D.N.Y. Sept. 16, 2013) (at the conditional certification stage, the Court should draw all inferences in favor of the plaintiff); Qing Tian Zhuo v. Jia Xing 39th Inc., No. 14-CV-2848 (SHS), 2015 WL 1514950, at *3 (S.D.N.Y. Apr. 1, 2015) (plaintiff's affirmation describing conversations with co-workers satisfied required factual showing). [2]

But to the extent Plaintiff seeks to represent employees other than deliverymen, he has not established that he is competent to do so. Plaintiff's affidavit does not provide a basis on which the Court can infer that the proposed members of the collective action were victims of a common illegal policy. Plaintiff states that he "used to chat" with one server, Ah Ming, about his salary, and that food preparer "Amigo" used to "complain to [Plaintiff] about how low his salary is." Shi Aff. ¶¶ 16 (p. 6), 39 (p. 8). But Plaintiff does not "provide *any* detail as to a *single* such [chat]." Sanchez, 2014 WL 465542, at *2 (emphasis in original). It is not clear that Plaintiff ever spoke with the other putative collective members. Plaintiff states that he knows of one server's salary and schedule only from Ah Ming. Shi Aff. ¶ 21 (p. 7). As for other putative collective members—the sushi bar worker, kitchen worker, and dishwasher—Plaintiff does not even allege hearsay knowledge and does not provide any information about their pay or basis for his understanding that they were denied minimum wage or overtime pay.

---

[2] Plaintiff also cites "Kiang v. Yummy Oriental Restaurant Inc., et al., No. 18cv5256 (SJF)(ARL), at *7 (S.D.N.Y. July 1, 2019)," for the proposition that the affidavit of one plaintiff can satisfy the factual showing to certify a class of all current and former non-exempt, non-managerial employees. Memorandum of Law in Support of Plaintiff's Motion, ECF No. 34, 10-11. Kiang v. Yummy Oriental Restaurant Inc. is an Eastern District of New York case. The Court is aware of another recent case in which Plaintiff's counsel, Troy Law, miscited this same case. See Zhongle Chen v. Kicho Corp., No. 18-CV-7413 (PMH)(LMS), 2020 WL 1900582, at *9 (S.D.N.Y. Apr. 17, 2020). As Judge Smith did in Zhongle Chen, the Court reminds Plaintiff's counsel of its ethical and professional obligation to cite legal authority properly. See N.Y. R. Prof'l Conduct 3.3(a)(1) ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal").

These "unsupported assertion[s]" cannot satisfy Plaintiff's burden, however low, at this preliminary stage. See Meyers, 624 F.3d at 555. Cf. She Jian Guo, 2014 WL 5314822, at *3 (denying conditional certification of collective of all non-managerial employees based on conclusory affirmations of deliverymen). Plaintiff's evidence fails to provide any criteria by which the Court may determine whether Defendants have a "common plan or policy" that applies to all non-managerial job titles. The issue here is not that Plaintiff submitted just one affidavit in support of the motion but rather that the affidavit was insufficiently detailed to extend conditional certification beyond Plaintiff's own job title. Compare Ramos v. Platt, No. 13-CV-8957 (GHW), 2014 WL 3639194, at *2 (S.D.N.Y. July 23, 2014) (granting certification based on one declaration discussing conversations with seven co-workers, several of whom were identified by name).

As discussed below, the three-year statute of limitations in this case will run from the date of notice rather than from September 12, 2019, the date complaint was filed. See Knox v. John Varvatos Enterprises Inc., 282 F. Supp. 3d 644, 662 (S.D.N.Y. 2017). Accordingly, the Court grants conditional certification as to deliverymen employed by Defendants within three years from the date of the notice to the present but denies it as to all other employees.

## II.     Form and Content of the Proposed Notice

Once a court determines that plaintiff has met the burden for initial collective action certification, the court may grant court-authorized notice advising all potential opt-in plaintiffs of their right to join the litigation. See Lynch, 491 F. Supp. at 370-71. The form and content of the notice must be approved by the court prior to mailing. Krueger v. New York Tel. Co., No. 93-CV-0178 (LMM), 1993 WL 276058, at *3 (S.D.N.Y. July 21, 1993) (citing Hoffmann-La Roche, 493 U.S. 165, 170 (1989)).

### A.  Content of the Notice

To assess whether a proposed notice is appropriate, "[c]ourts consider the overarching policies of the collective suit provisions and whether the proposed notice provides accurate and timely notice concerning the pendency of the collective action, so that [an individual receiving the notice] can make an informed decision about whether to participate." Ting Qiu Qiu v. Shanghai Cuisine, Inc., No. 18-CV-5448 (ER), 2019 WL 6002371, at *4 (S.D.N.Y. Nov. 14, 2019) (quoting Delaney v. Geisha NYC, LLC, 261 F.R.D. 55, 59 (S.D.N.Y. 2009)) (internal citation and quotation marks omitted). At a minimum, a notice should include:

> [T]he purpose of the notice, the nature of the lawsuit, the proposed class composition, the legal effect of joining the lawsuit, the fact that the court has not taken any position regarding the merits of the lawsuit, how to join the lawsuit, the purely voluntary nature of the decision and the legal effect of not joining the lawsuit, the prohibition against retaliation, and the relevant contact information for inquiries.

Hernandez v. City of New York, No. 16-CV-3445 (RA), 2017 WL 2829816, at *7 (S.D.N.Y. June 29, 2017) (quoting Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 169-70 (S.D.N.Y. 2014)).

The Court approves the proposed notice with the following changes, consistent with this order: (1) the notice must be modified to clarify that only "deliverymen" and not all "current and former non-exempt employees" are included in the collective; (2) the names of Defendants John Doe 01, Peter Doe, and John Doe 02 should be replaced by Guoyong Chen, Guoqing Chen a/k/a Peter Chen, and Jian Xiang Yang, respectively, and Yi Nen Chen's name should be added to the notice; and (3) the notice should state that claimants must act and mail their consent form within 60 rather than 90 days of notice, as discussed below.

**B.  Disclosure of Contact Information**

Plaintiff requests that Defendants be ordered to produce a Microsoft Excel data file containing information including, but not limited to, putative plaintiffs' last known address, last known WhatsApp, WeChat and/or Facebook usernames, email address, work location, dates of employment and position. Memorandum of Law in Support of Plaintiff's Motion, ECF No. 34 ("Pl.'s Br.) 14. Defendants do not meaningfully address such disclosure beyond noting that they do not maintain computer business records and that "[a] notice in social media, etc., is not warranted." Memorandum of Law in Opposition to Plaintiff's Motion, ECF No. 50, at 9, n.3.

"Courts in this Circuit have held that disclosure of employee contact information is relevant and appropriate in connection with conditional collective action certification." Tate v. WJL Equities Corp., No. 13-CV-8616 (JLC), 2014 WL 2504507, at *2 (S.D.N.Y. 2014) (collecting cases). Accordingly, the Court directs Defendants to provide the names, addresses, telephone numbers, email addresses, and dates of employment of potential collective action members, as limited by this order, to Plaintiff's counsel within fourteen days of this order. If Defendants have other contact information for potential plaintiffs in their possession, including WhatsApp, WeChat, and Facebook usernames, Defendants must produce that information as well. See Zhongle Chen v. Kicho Corp., No. 18-CV-7413 (PMH) (LMS), 2020 WL 1900582, at *9 (S.D.N.Y. Apr. 17, 2020).

**C.  Language of the Notice**

Plaintiff requests that the notice be disseminated in Chinese and English. Pl.'s Br. 20. Translating the notice will increase potential plaintiffs' ability to understand and opt in to the action. Accordingly, as other courts in this Circuit have done, the Court grants Plaintiff's request

to have the notices written in Chinese and English. See Jian Wu v. Sushi Nomado of Manhattan, Inc., No. 17-CV-04661 (PGG) (DF), 2019 WL 3759126, at *12 (S.D.N.Y. July 25, 2019).

### D. Distribution of Notice

Plaintiff seeks to distribute the notice by mail, email, text message, or social media group and individual chat and posts. Pl.'s Br. 16. Though some courts have expressed concern with dissemination by email, "given the reality of communications today, email notification is more effective at notifying potential opt-in plaintiffs than mailed notice alone." Knox, 282 F. Supp. 3d at 667 (internal citation and quotation marks omitted). Plaintiff is authorized to distribute notice by email. Dissemination by text message is also appropriate "where, as here, he nature of the employer's business facilitate[s] a high turnover rate among employees." Lijun Geng v. Shu Han Ju Restaurant II Corp., No. 18-CV-12220 (PAE) (RWL), 2019 WL 4493429, at *20 (S.D.N.Y. Sept. 9, 2019) (internal citation and quotation marks omitted) (approving distribution by text message to restaurant employees). Distribution of notice via social media message is also allowed to the extent that Defendants can produce social media usernames for potential opt-in plaintiffs. See id.

### E. Publication of Notice on Counsel's Website

Plaintiff's request to publish the full opt-in notice on Plaintiff's counsel's website is denied. The cases cited in support of this request, Varghese v. JP Morgan Chase & Co., No. 14-CV-1718 (PGG) 2016 WL 4718413, at * 9 (S.D.N.Y. Sep. 8, 2016), and Mark v. Gawker Media LLC, No. 13-CV-4347 (AJN), 2014 WL 5557489, at *3 (S.D.N.Y. Nov. 3, 2014), address dissemination of notice via standalone websites, not Plaintiff's counsel's own website. Because Plaintiff has presented no evidence that putative collective action members are likely to visit Plaintiff's counsel's website, the Court has no reason to believe that notice on counsel's website

would effectively reach potential plaintiffs. See <u>Zhongle Chen</u>, 2020 WL 1900582, at *10 (denying request to post opt-in notice on Plaintiff's counsel's website).

### F.  Posting Notice at Defendants' Restaurant

Plaintiff requests that the Court order Defendants to post the notice form at conspicuous locations in Defendants' restaurant. "Courts routinely approve requests to post notice on employee bulletin boards and in other common areas, even where potential members will also be notified by mail." <u>Iriarte v. Cafe 71, Inc.</u>, No. 15-CV-3217 (CM), 2015 WL 8900875, at *7 (S.D.N.Y. Dec. 11, 2015) (quoting <u>Whitehorn v. Wolfgang's Steakhouse, Inc.</u>, 767 F. Supp. 2d 445, 449 (S.D.N.Y. 2011)) (internal quotation marks omitted).

Here, however, Defendants represent in their brief that there is only one delivery person on staff because of the COVID-19 pandemic. Accordingly, posting in the restaurant may not be an effective way to reach members of the collective, the majority of whom are no longer employed by Defendants. It may also cause confusion about participation in the collective action. Defendants are ordered to provide the notice to every delivery person who currently works at the restaurant. Plaintiff may renew his request for posting of the notice if he believes that such method would be more effective than personal delivery.

### G.  Reminder Notice

Plaintiff also seeks the Court's permission to "send a reminder mailing and email to all unresponsive collective action members half-way through the notice period." Pl.'s Br. 18. Plaintiff's request is granted. A reminder notice is appropriate "[g]iven that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in." <u>Chhab</u>, 2013 WL 5308004, at *16.

**H. Opt-In Period**

Plaintiff requests that putative collective members be granted 90 days to opt in. A 60-day opt-in period is "more consistent with FLSA practice." Whitehorn, 767 F. Supp. 2d at 451-52. Courts generally approve 90-day opt-in periods "where the period is agreed upon between the parties or special circumstances require an extended opt-in period." Id. Plaintiff does not suggest any circumstances to support an extended opt-in period. Accordingly, the Court finds that a 60-day opt-in period is sufficient and denies Plaintiff's request for a 90-day opt-in period. See Yap v. Mooncake Foods, Inc., 146 F. Supp. 3d 552, 556–57 (S.D.N.Y. 2015) ("[C]ourts in this Circuit routinely restrict the opt-in period to sixty days") (citing Fa Ting Wang v. Empire State Auto Corp., No. 14-CV-1491 (WFK), 2015 WL 4603117, at *11 (E.D.N.Y. July 29, 2015) (collecting cases)); Escano v. N&A Produce and Grocery Corp., No. 14-CV-4239 (PAC), 2015 WL 1069384, at *3 (S.D.N.Y. Mar. 11, 2015) (ordering a 60-day opt-in period when the plaintiff "[did] not explain why a 90-day period is necessary").

**I. Notice Period**

Though the statute of limitations for FLSA claims is typically two years, the appropriate statute of limitations is three years where, as here, a plaintiff alleges that Defendants willfully violated the FLSA. Am. Compl. ¶¶ 1-2, 26, 29 35-36, 80. See Hamadou, 915 F. Supp. 2d at 668 ("Where willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action."); Iglesias-Mendoza, 239 F.R.D. at 369.

Plaintiff appears to concede that the statute of limitations should be tolled from the date of notice rather than the date of the complaint. See Pl.'s Br. 21 ("In a collective action suit, the statute of limitations period continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written consent form opting into the suit."). This is the

normal rule. See 29 U.S.C. § 255(a). In any case, as discussed below, Plaintiff does not demonstrate a "realistic possibility" that opt-in plaintiffs whose employment falls outside the limitations period will be able to show equitable tolling. See Knox, 282 F. Supp. 3d at 662. Accordingly, the Court will measure the limitations period from the date of the notice.

### J.   Equitable Tolling

Finally, Plaintiff request that the Court categorically toll the statute of limitations for 90 days until the expiration of the opt-in period. Pl.'s Br. 21. "As a general matter, equitable tolling may be used to suspend the statute of limitations 'against a plaintiff who is unaware of his cause of action', a step that is particularly appropriate if the defendant's conduct 'concealed from the plaintiff the existence of a cause of action.'" Yu G. Ke v. Saigon Grill, Inc., 595 F. Supp. 2d 240, 259 (S.D.N.Y. 2008) (quoting Cerbone v. Int'l Ladies' Garment Workers Union, 768 F.2d 45, 48 (2d Cir. 1985)). A litigant seeking equitable tolling must establish that he was unable to obtain information bearing on the existence of the claim "despite all due diligence." Jinquan Yin v. Pomodoro Italian Express, Inc., No. 17-CV-10244 (AJN), 2019 WL 1369469, at *4 (S.D.N.Y. March 11, 2019) (internal citation and quotation marks omitted). Plaintiff has not presented any evidence regarding potential plaintiffs' awareness of their claims or their diligence in pursuing their rights. Accordingly, at this stage, the request to toll the statute of limitations by 90 days is denied. As the Court already ordered, unrelated to this motion, the statute of limitations will be equitably tolled by 60 days to account for delays caused by the global COVID-19 pandemic. See ECF No. 36. The Court will also consider an application from any opt-in plaintiff based on an individualized showing that tolling is appropriate. See Jinquan, 2019 WL 1369469, at *4 (citing Whitehorn, 767 F. Supp. 2d at 451).[3]

---

[3] This discussion may be academic as it appears that the restaurant has been open for only two and a half years.

**CONCLUSION**

Plaintiff's motion for conditional certification of a collective action under the FLSA is GRANTED in part. The Court authorizes notice to be sent to all deliverymen employed by Defendants within three years plus 60 days of the date of the notice. Plaintiff shall file a revised proposed notice consistent with this order no later than seven days from the date of this order. The Clerk of Court may terminate the motion at ECF No. 32.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:       August 10, 2020
             New York, New York