UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
YUEFENG SHI,

                              Plaintiff,        Case No. 19-cv-08502 (SN)

          v.                                  **AFFIDAVIT OF YUEFENG SHI**
                                                        **IN SUPPORT OF MOTION FOR**
TL & CG INC.                                         **SUMMARY JUDGMENT**
      d/b/a Han,
GUOYONG CHEN
      a/k/a Guo Yong Chen
      a/k/a John 01 Doe,
GUOQING CHEN
      a/k/a Guo Qing Chen
      a/k/a Peter Chen
      a/k/a Peter Doe,
JIAN XIANG YANG
      a/k/a Jianxiang Yang
      a/k/a John 02 Doe, and
YI NEN CHEN
      a/k/a Yinen Chen,
                                Defendants.
---------------------------------------------------------------x

I, Yuefeng Shi, being duly sworn and under penalty of perjury, depose and state as follows:

1. I am a resident of Queens, New York, and I am over 18 years of age.

2. I have personal knowledge of the matters stated below.

3. From on or about February 20, 2018 to October 04, 2018, and again from on or about November 21, 2018 to July 30, 2019, I was employed by Defendants to work as a deliveryman at 854 Tenth Avenue, New York, NY 10019.

4. I learned about the job available at Han sushi from Peter Chen making a WeChat post saying Han sushi was looking for delivery people.

5. After seeing that WeChat post, I called Peter Chen. He told me what my duties as a delivery worker would be, and my salary.

6. After the phone conversation, I went to the restaurant and Peter hired me.

7. Once I was hired, usually, Peter Chen would verbally tell delivery workers, including me, what days we were assigned to work.

8. Yi Nen Chen was the hostess at Han sushi restaurant.

9. She would pick up customer telephone delivery orders from customers and tell me to deliver food to those customers.

10. From time to time, based on need, she would tell me to fill takeout sauce containers, to clean the bathroom, to cut and fold takeout containers, to stock newly-delivered beverages in the basement for storage, and to bring beverages up from storage in the basement to the ground floor for sale.

11. I've observed Yi Nen Chen hiring and firing employees, including a short Chinese hostess with black hair and brown eyes; a thin, tall Chinese delivery man with black hair and brown eyes; kitchen workers; sushi bar workers; and servers.

12. When Yi Nen Chen would fire workers, she would loudly and aggressively call them out for minor mistakes, and then those workers would leave the restaurant.

13. From time to time, Yi Nen Chen would verbally tell delivery workers, including me, what days we were assigned to work.

14. At no point during my employment was I given a written statement, in English and Chinese, containing: my rate of pay; my rate of overtime pay; credits claimed as part of the minimum wage; my regular pay day; and my employer's name, doing-business-as name, business address, mailing address, telephone number.

15. When I was hired, Peter Chen showed me a piece of paper with space to fill in the above information, and had me write my name on it. I took a picture of it. However, the information wasn't filled in, and I wasn't given a copy with the information filled in.

16. I regularly worked 50 hours per week: from 11:00 through 22:00 with 1 hour of break (during which I had to stay on call in the restaurant), on Mondays, Tuesdays, Wednesdays, Fridays, and Saturdays.

17. There was no time clock, sign-in sheet, or other system in place for Defendants to make a record of my arrival, departure, or work times.

18. Throughout my employment, I had to spend more than 2 hours, more than 20 percent of my work day, on non-tipped side work, including making sauces, cutting cardboard for delivery boxes, stocking inventory, and packing.

19. I was promised a salary of $50.00 per day.

20. However, throughout my employment, I was paid at a rate of $45.00 per day. For a 5-day week, this would amount to $225.00.

21. I was paid by being given a check for $1,500.00 every month. However, if $1,500.00 exceeded $45.00 times the number of days I worked in the month, I would have to give the difference back in cash. For instance, if I worked 20 days in a month, I would keep $900.00 (20 * $45.00), and have to give back the remaining $600.00.

22. Throughout my employment, my salary did not include pay for hours in a week beyond 40, did not include an overtime premium, and did not include a spread of time premium.

23. At no point during my employment was I informed, in writing or otherwise, that Defendants would be taking a tip credit against the minimum wage.

24. At no point during my employment was I given a statement along with my pay setting forth: the pay period; my name; my employer's name, address, and telephone number; my pay rate; my overtime pay rate; my gross wages; deductions; allowances; and net wages.

25. This document has been translated to me in my native language of Mandarin Chinese, and I fully comprehend the contents.

Dated: 09/29/2021

_____
Yuefeng Shi

Sworn before me this 29th day of September, 2021

_____
Notary Public

AARON B. SCHWEITZER
Notary Public, State of New York
No. 02SC6380865
Qualified in Nassau County
Commission Expires Sept. 17, 2022

## TRANSLATOR'S DECLARATION

I, Tom Chang, hereby declare under penalty of perjury, pursuant to Section 1746 of Title 28 of the United States Code, that I am fluent in Mandarin Chinese and English, and that I have provided a full and accurate translation of the above Affidavit of Yuefeng Shi in Support of Motion for Summary Judgment.

Dated: 09/29/21

_____
Tom Chang

Sworn before me this 29th day of September, 2021

_____
Notary Public

AARON B. SCHWEITZER
Notary Public, State of New York
No. 02SC6380865
Qualified in Nassau County
Commission Expires Sept. 17, 2022