**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------- x
YUEFENG SHI,

                          Plaintiff,         Case No. 19-cv-08502 (SN)

               v.

TL & CG INC.
        d/b/a Han,
GUOYONG CHEN
        a/k/a Guo Yong Chen
        a/k/a John 01 Doe,
GUOQING CHEN
        a/k/a Guo Qing Chen
        a/k/a Peter Chen
        a/k/a Peter Doe,
JIAN XIANG YANG
        a/k/a Jianxiang Yang
        a/k/a John 02 Doe, and
YI NEN CHEN
        a/k/a Yinen Chen,

                          Defendants.
----------------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR SUMMARY JUDGMENT**

Aaron B. Schweitzer
TROY LAW, PLLC
41-25 Kissena Boulevard, Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
troylaw@troypllc.com
*Attorneys for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF MATERIAL FACTS ................................................................................. 1

STANDARD ............................................................................................................................. 6

ARGUMENT ............................................................................................................................ 6

    I.      THIS COURT SHOULD GRANT PLAINTIFF'S MOTION FOR  SUMMARY JUDGMENT BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT, AND PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ............... 6

        A.    DEFENDANTS WERE PLAINTIFFS' EMPLOYERS UNDER FLSA AND NYLL ................. 8

        B.    TL & CG INC. WAS A COVERED EMPLOYER UNDER FLSA ...................................... 10

        C.    PLAINTIFF WAS NOT PAID FOR HIS HOURS IN EXCESS OF 40 EACH WEEK ............... 10

        D.    PLAINTIFF WAS NOT PAID HIS PROMISED WAGE ...................................................... 11

        E.    PLAINTIFF WAS NOT PAID MINIMUM WAGE ............................................................. 12

            1.    Defendants Were Not Entitled to a Tip Credit ................................................. 12

            2.    Plaintiff's Calculated Hourly Wage Is Less than the Federal and New York Minimum Wages ................................................................................................. 13

        F.    PLAINTIFF WAS NOT PAID OVERTIME .......................................................................... 14

        G.    PLAINTIFF WAS NOT PAID SPREAD OF TIME ............................................................. 14

        H.    PLAINTIFF WAS NOT FURNISHED WAGE NOTICES OR WAGE STATEMENTS ............. 15

        I.    PLAINTIFF WAS NOT REIMBURSED FOR TOOLS OF THE TRADE ............................... 15

        J.    PLAINTIFF IS ENTITLED TO LIQUIDATED DAMAGES FOR DEFENDANTS' WILLFUL AND MALICIOUS CONDUCT .......................................................................................... 16

        K.    PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST ............................................. 18

        L.    PLAINTIFFS ARE ENTITLED TO REASONABLE ATTORNEY FEES ................................ 18

CONCLUSION ...................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

29 U.S.C. § 203(m) ...................................................................................................... 12

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ............... 6

*Barfield v. New York City Health & Hosp. Corp.*, 537 F.3d 132 (2d Cir. 2008) ............ 8, 9, 16, 17

*Carter v. Dutchess Cmty. College*, 735 F.2d 8 (2d Cir. 1984) ................................................. 8, 9

*Carter v. Frito-Lay, Inc.*, 425 N.Y.S. 2d 115 (1st Dep't 1980), *aff'd*, 52 N.Y.2d 994, 438
    N.Y.S.2d 80 (1981) ............................................................................................................ 18

*Cavalotti v. Daddyo's BBQ, Inc.*, No. 15-cv-06469 (PKC) (VMS), 2018 U.S. Dist. LEXIS
    154918 (E.D.N.Y. Sep. 8, 2018) ...................................................................................... 11

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .......................... 6

*Chandler v. Bombardier Capital, Inc.*, 44 F.3d 80 (2d Cir. 1994) ............................................. 18

*Chen v. Patel*, No. 16-cv-01130 (AT), 2019 U.S. Dist. LEXIS 110701 (S.D.N.Y. July 2, 2019) 1,
    10, 12, 17

*Choudhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59 (2d Cir. 2016) .......................... 18

*D'Amico v. City of N.Y.,* 132 F.3d 145 (2d Cir.1998) ...................................................................... 6

*Fernandez v. HR Parking, Inc.*, 407 F. Supp. 3d 445 (S.D.N.Y. 2019) ........................................ 9

*Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998) ..................................................................... 18

*Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28 (1961) ....................................................... 8

*Grenawalt v. AT&T Mobility LLC*, 642 Fed. Appx. 36 (2d Cir. 2016) ........................................ 9

*Griffon v. Astro Moving & Storage Co.*, No. 11-cv-01844 (MKB), 2015 U.S. Dist. LEXIS 43326
    (E.D.N.Y. Mar. 31, 2015) .................................................................................................. 17

*He v. Home on 8th Corp.*, No. 09-cv-05630, 2014 U.S. dist. LEXIS 114605 (S.D.N.Y. Aug. 13,
    2014) ................................................................................................................................... 12

*Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999) .................................................... 10

*Hernandez v. JRPAC Inc.*, No. 14-cv-04176 (PAE), 2016 U.S. Dist. LEXIS 75430 (S.D.N.Y.
    June 9, 2016) ................................................................................................................ 12, 16

*Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490 (S.D.N.Y. 2015) ........................................ 12

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011) .................................. 14, 17

*Lin v. Benihana Nat'l Corp.*,755 F. Supp. 2d 504 (S.D.N.Y. 2011) ............................ 16

*Lynch v. City of New York*, 291 F. Supp. 3d 537 (S.D.N.Y. 2018) ............................... 14

*McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 176 Misc. 2d 325 (N.Y. County 1997) .... 18

*McLean v. Garage Mgmt. Corp.*, 2012 U.S. Dist. LEXIS 55425 (S.D.N.Y. April 19, 2012) ...... 17

*Meda v. Kogda*, No. 17-cv-06853 (LGS) (KNF), 2019 U.S. Dist. LEXIS 150694 (S.D.N.Y. Sep. 3, 2019) ................................................................................................. 11

*Ochoa v. Aucay General Construction, Inc.*, No. 19-cv-03866 (ST), 2020 U.S. Dist. LEXIS 1747071 (E.D.N.Y. Sep. 15, 2020) ............................................................... 11

*Perez Garcia v. Hirakegoma Inc.*, No. 17-cv-07608 (SLC), 2020 U.S. Dist. LEXIS 40637 (S.D.N.Y. Mar. 9, 2020) ............................................................................ 11

*Quiroz v. Luigi's Dolceria, Inc.*, No. 14-cv-00871, 2016 U.S. Dist. LEXIS 64662 (E.D.N.Y. May 17, 2016) .............................................................................................. 11

*Redd v. N.Y. Div. of Parole,* 678 F.3d 166 (2d Cir.2012) ........................................... 6

*Reilly v. Natwest Mkts. Group,* 181 F.3d 253 (2d Cir. 1999), *cert. denied*, 528 U.S. 1119 (2000) .................................................................................................. 18

*Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442 (S.D.N.Y. 2015) ..................... 13, 16

*Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61 (2d Cir. 2003) ............................... 8, 9

*Zhou v. Aberdeen Dim Sum & Seafood Inc.*, No. 14-cv-02014, 2016 U.S. Dist. LEXIS 147337 (S.D.N.Y. Oct. 24, 2016) .......................................................................... 12

**Statutes**

29 U.S.C. § 203(d) ...................................................................................... 8

29 U.S.C. § 203(e)(1) ................................................................................... 8

29 U.S.C. § 203(g) ...................................................................................... 8

29 U.S.C. § 203(s)(1)(A) ............................................................................. 10

29 U.S.C. § 206 ...................................................................................... 1, 14

29 U.S.C. § 206(a) .................................................................................... 12

29 U.S.C. § 206(a)(1) ............................................................................. 7, 12

29 U.S.C. § 207 ...................................................................................................... 1

29 U.S.C. § 207(a)(1) ............................................................................................. 7

29 U.S.C. § 216(b) .................................................................................. 1, 7, 16, 17

29 U.S.C. § 260 ..................................................................................................... 16

N.Y. Lab. L. § 11 .................................................................................................... 1

N.Y. Lab. L. § 191 ................................................................................................ 11

N.Y. Lab. L. § 191.1 ........................................................................................... 1, 7

N.Y. Lab. L. § 195.1 ....................................................................................... 1, 7, 15

N.Y. Lab. L. § 195.3 ....................................................................................... 1, 7, 15

N.Y. Lab. L. § 198 .................................................................................................. 7

N.Y. Lab. L. § 198.1-a ........................................................................................ 1, 7

N.Y. Lab. L. § 198.1-b ........................................................................................ 1, 7

N.Y. Lab. L. § 198.1-d ........................................................................................ 1, 7

N.Y. Lab. L. § 199 .................................................................................................. 1

N.Y. Lab. L. § 652.1 ...................................................................................... 1, 7, 12

N.Y. Lab. L. § 652.2 ............................................................................................... 1

N.Y. Lab. L. § 663.1 ........................................................................................... 1, 7

NYCPLR § 5001 ................................................................................................... 18

NYCPLR § 5004 ................................................................................................... 18

NYLL § 198(1-a) .................................................................................................. 17

NYLL § 663(1) ................................................................................................ 18, 19

**Rules**

Fed. R. Civ. P. 56(a) .............................................................................................. 6

**Regulations**

12 N.Y.C.R.R § 146-2.7(c) ................................................................................... 16

12 N.Y.C.R.R. § 1.3 .................................................................................................... 13

12 N.Y.C.R.R. § 146-1.2(a)(1)(i)(a) ....................................................................... 4, 14

12 N.Y.C.R.R. § 146-1.3 ........................................................................................... 12

12 N.Y.C.R.R. § 146-1.3(a)(1)(i)(a) ....................................................................... 4, 14

12 N.Y.C.R.R. § 146-1.4 ................................................................................. 1, 4, 7, 14

12 N.Y.C.R.R. § 146-1.6 ....................................................................................... 1, 15

12 N.Y.C.R.R. § 146-2.5 ........................................................................................... 11

12 N.Y.C.R.R. § 146-2.7 ......................................................................................... 1, 7

12 N.Y.C.R.R. § 146-3.3 ........................................................................................... 14

12 N.Y.C.R.R. § 146-3.4(a) ...................................................................................... 14

12 N.Y.C.R.R. § 146-3.5 ........................................................................................... 11

12 N.Y.C.R.R. § 2.2(a) ............................................................................................. 13

29 C.F.R. § 531.35 ........................................................................................... 1, 7, 16

29 C.F.R. § 785.11 ................................................................................................... 14

## PRELIMINARY STATEMENT

Plaintiff Yuefeng Shi ("Plaintiff" or "Shi"), by and through his attorneys Troy Law, PLLC, respectfully submits this memorandum of law in support of his motion for summary judgment as to liability against Defendants TL & CG Inc., Guoyong Chen, Guoqing Chen, and Yi Nen Chen,[1] ("Defendants") for: 1) failure to pay Plaintiff all promised wages under Section 191.1 of the New York Labor Law ("NYLL"), N.Y. Lab. L. § 191.1; 2) failure to pay Plaintiff minimum wage under Section 206 of the Fair Labor Standards Act ("FLSA") and Section 652.1 of the NYLL, 29 U.S.C. § 206, N.Y. Lab. L. § 652.1; 3) failure to pay Plaintiff overtime under Section 207 of the FLSA and Section 146-1.4 the Hospitality Industry Wage Order ("Wage Order") promulgated pursuant to Sections 11, 199, and 652.2 of the NYLL, 29 U.S.C. § 207, N.Y. Lab. L. §§ 11, 199, 652.2, 12 N.Y.C.R.R. § 146-1.4; 4) failure to pay Plaintiff spread of time under Section 146-1.6 of the Wage Order, 12 N.Y.C.R.R. § 146-1.6; 5) failure to furnish Plaintiff with a wage notice compliant with Section 195.1 of the NYLL at time of hire or thereafter, N.Y. Lab. L. § 195.1; 6) failure to furnish Plaintiff with wage statements compliant with Section 195.3 of the NYLL with each payment of wages N.Y. Lab. L. § 195.3; 7) doing the foregoing in bad faith, 29 U.S.C. § 216(b), N.Y. Lab. L. §§ 198.1-a, 198.1-b, 198.1-d, 663.1; and 8) failure to reimburse Plaintiff for tools of the trade under Section 531.35 of Title 29 of the Code of Federal Regulations implementing the FLSA and Section 146-2.7 of the Wage Order, 29 C.F.R. § 531.35, 12 N.Y.C.R.R. § 146-2.7, *Chen v. Patel*, No. 16-cv-01130 (AT), 2019 U.S. Dist. LEXIS 110701, at *29–30 (S.D.N.Y. July 2, 2019).

## STATEMENT OF MATERIAL FACTS

Shi was employed by TL & CG Inc., Guoyong Chen, Guoqing Chen, Jian Xiang Yang, and Yi Nen Chen (hereinafter referred to collectively as "Defendants"). Dkt. No. 40 ("Am. Cplt.")

---

[1] Jian Xiang Yang has not appeared in this case and Plaintiff will move separately for a default judgment against him after a determination of appearing Defendants' liability and damages.

¶¶ 7, 38; Dkt. No. 48 ("Am. Ans.") ¶¶ 7, 38. Defendants were aware of their obligations, including to pay minimum wage, to pay overtime, to pay spread of time, and specifically to pay hourly rates, under the New York Labor Law and Hospitality Industry Wage Order. Ex. 4.

TL & CG Inc. is a domestic business corporation organized under the laws of the State of New York with a principal address at 854 Tenth Avenue, New York, NY 10019, where it operates Han sushi restaurant. Am. Cplt. ¶ 8; Am. Ans. ¶ 8; Ex. 1. During the period relevant to this lawsuit, TL & CG Inc. was a business engaged in interstate commerce with gross sales in excess of $500,000.00 per year. Am. Cplt. ¶ 9; Am. Ans. ¶ 9. During the period relevant to this lawsuit, TL & CG Inc. purchased and handled goods moved in interstate commerce. Am. Cplt. ¶ 10; Am. Ans. ¶ 10. At all times relevant to this lawsuit TL & CG had more than 10 employees. Ex. 3. Specifically: in Quarter 1 of 2018, TL & CG had at least 15 employees;[2] in Quarter 2 of 2018, TL & CG had at least 15 employees; in Quarter 3 of 2018, TL & CG had at least 13 employees; in 2018, TL & CG had at least 18 employees; in Quarter 1 of 2019, TL & CG had at least 12 employees; in Quarter 2 of 2019, TL & CG had at least 12 employees; in Quarter 3 of 2019, TL & CG had at least 13 employees; and in 2019, TL & CG had at least 13 employees. Ex. 3.

Throughout the period relevant to this lawsuit, Guoyong Chen owned 100% of the shares of TL & CG Inc. Am. Cplt. ¶ 12; Am. Ans. ¶ 12; Ex. 1. Throughout the period relevant to this lawsuit, Guoyong Chen was the President of TL & CG Inc. Ex. 2; Ex. 3. Throughout the period relevant to this lawsuit, Guoyong Chen had the power to hire employees to work for TL & CG Inc., had the power fire employees of TL & CG Inc., supervised and controlled employee work schedules and conditions of employment at Han sushi restaurant, determined employees' rates and methods of payment at Han sushi restaurant, and maintained employee records for TL & CG Inc.

---

[2] 14 employees are listed, but Shi is not among them even though he was employed from about February 8, 2018.

Am. Cplt. ¶ 12; Am. Ans. ¶ 12. Guiqing Chen hired Shi, paid Shi, and arranged Shi's working schedule. Dkt. No. 33-4 ("Shi Aff. 1") ¶ 4, Ex. 9 ("Shi Aff. 2") ¶¶ 4–7, 16. Guoqing Chen signed Shi's paychecks. Ex. 6. Guoqing Chen and Yi Nen Chen are husband and wife respectively. Am. Cplt. ¶ 21; Am. Ans. ¶ 21. Yi Nen Chen hired and fired workers at Han sushi restaurant, from time to time arranged what days Shi would work, and took customer delivery orders that she would then pass to Shi to deliver. Shi Aff. 2 ¶¶ 8–13.

Shi worked for Han sushi restaurant, located at 854 Tenth Avenue, New York, NY 10019, as a deliveryman from on or about February 8, 2018 through on or about July 30, 2019, except from on or about October 5, 2018 through on or about November 20, 2018. Am. Cplt. ¶¶ 7, 38, 39; Am. Ans. ¶¶ 7, 38, 39; Ex. 5; Ex. 6. While employed by TL & CG Inc., Guoyong Chen, Guoqing Chen, Jian Xiang Yang, and Yi Nen Chen, Shi was not exempt from receiving overtime. Am. Cplt. ¶ 30; Am. Ans. ¶ 30.

At the time he was hired, Shi was shown, and signed, a blank wage notice, which was filled in after the fact, and not furnished a copy to keep, despite Defendants having knowledge that they had to furnish him a signed copy of the wage notice. Ex. 5; *see also* Shi Aff. 1 ¶ 12. The time-of-hire wage notice as filled out purported to show that Shi would be paid at a rate of $10.00 per hour with a $2.00 per hour tip credit. Ex. 5. Defendants knew that $10.00 per hour was less than the $13.00 per hour minimum wage for employees of hospitality industry employers of more than 10 employees in New York City in 2018. Ex. 4. Defendants knew that $10.00 per hour was less than the $10.85 per hour post-tip-credit minimum cash wage permitted to service employees of hospitality industry employers of more than 10 employees in New York City in 2018. Ex. 4. The time-of-hire wage notice as filled out purported to show that Shi would be paid at an overtime rate of $16.00 per hour. Ex. 5. Defendants knew that $16.00 per hour was less than the $19.50 per hour

minimum wage for employees of hospitality industry employers of more than 10 employees in New York City in 2018. Ex. 4. Defendants knew that $16.00 per hour was less than the $17.35 per hour post-tip-credit minimum cash wage permitted to service employees of hospitality industry employers of more than 10 employees in New York City in 2018. Ex. 4. The time-of-hire wage notice as filled out failed to set forth Shi's regular pay interval or payday. Ex. 5.

A subsequent wage notice, filled out in January 2019, purported to show that Shi would be paid at a rate of $11.25 per hour with a $2.25 per hour tip credit. Ex. 5. $11.25 per hour was less than the $15.00 per hour minimum wage for employees of hospitality industry employers of more than 10 employees in New York City in 2019. *See* 12 N.Y.C.R.R. § 146-1.2(a)(1)(i)(a). $11.25 per hour was less than the $12.50 per hour post-tip-credit minimum cash wage permitted to service employees of hospitality industry employers of more than 10 employees in New York City in 2019. 12 N.Y.C.R.R. § 146-1.3(a)(1)(i)(a). The subsequent wage notice filled out in January 2019 purported to show that Shi would be paid at an overtime rate of $18.00 per hour. Ex. 5. $18.00 per hour was less than the $22.50 per hour minimum wage for employees of hospitality industry employers of more than 10 employees in New York City in 2019. *See* 12 N.Y.C.R.R. § 146-1.4. $18.00 per hour was less than the $20.00 per hour post-tip-credit minimum cash wage permitted to service employees of hospitality industry employers of more than 10 employees in New York City in 2019. *See* 12 N.Y.C.R.R. §§ 146-1.3(a)(1)(i)(a), 1.4. The subsequent wage notice filled out in January 2019 failed to set forth Shi's regular pay interval or payday. Ex. 5.

The time-of-hire wage notice, and the subsequent wage notice filled out in January 2019, misrepresent Shi's rate of pay. Shi was promised a flat salary of $50.00 per day. Shi Aff. 1 ¶ 7. Shi was paid a flat salary of $45.00 per day, amounting to $225.00 per five-day week. Shi Aff. 1 ¶¶ 8, 9. Shi was given checks for $1,500.00 per month. Ex. 6, Shi Aff. 1 ¶ 10; *see also* Ex. 3 (recording

Shi being paid $4,500.00 in Quarter 2 of 2018 and Quarter 1 of 2019, $4,498.00 in Quarter 2 of 2019, and $1,499.00 in Quarter 3 or 2019 corresponding to the month of July). However, Shi had to kick back the difference between his pay by check and his $45.00 per day pay rate each pay day. Shi Aff. 1 ¶ 10. Shi's $45.00 per day salary did not include pay for overtime or spread of time. Shi Aff. 1 ¶¶ 11, 13, 14. TL & CG's quarterly NYS-45s misrepresent Shi's payments. For instance, they fail to report Shi's payments for February and March 2018 in the Quarter 1 2018 filing, and underreport Shi's payment by check for July 2019 by $1.00, and fail to report Shi's kickbacks. *C.f.* Ex. 3, Ex. 6.

Defendants failed to record, and keep and maintain records of, Shi's working time. Ex. 8 ¶ 33.[3] Throughout his employment, Shi regularly worked 50 hours per week: from 11:00 AM through 10:00 PM, with a 1-hour break, on Mondays, Tuesdays, Wednesdays, Fridays, and Saturdays. Shi Aff. 1 ¶ 6. Throughout his employment, Shi regularly worked a spread of time greater than 10 hours 5 days per week. Shi Aff. 1 ¶ 6. Throughout his employment, Shi regularly spent more than 2 hours per day, amounting to more than 20 percent of his 10-hour work day, preparing sauces, cutting cardboard for delivery containers, stocking inventory, and packing delivery orders. Shi Aff. 1 ¶¶ 10, 11. Throughout his employment, Shi was not provided a wage statement compliant with N.Y. Lab. L. § 195.3. Shi Aff. 1 ¶ 12; *see also* Ex. 8 ¶ 33.

Throughout his employment, in order to do his job, Shi had to purchase, keep, and maintain an electric bicycle to make deliveries. He spent $1,500.00 on his first electric bicycle, $800.00 on a second-hand replacement when that electric bicycle was stolen, and a battery of $250.00. Defendants did not reimburse Shi for these purchases, made for their benefit. Shi Aff. 1 ¶¶ 15, 16.

---

[3] The Exhibits C and D referred to, which were the only responsive documents in Defendants' possession, refer to TL & CG NYS-45 forms (reproduced here as Exhibit 3) and Shi's wage notices, paychecks, and W-2s (reproduced here as Exhibits 5, 6, and 7 respectively). Defendants did not keep, maintain, or disclose any time records.

## STANDARD

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Redd v. N.Y. Div. of Parole,* 678 F.3d 166, 173–74 (2d Cir.2012). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material within the meaning of Rule 56 where it "might affect the outcome of the suit under the governing law." *Id.*

This standard imposes the initial burden on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548*; see also Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505. The non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that [their] version of the events is not wholly fanciful." *D'Amico v. City of N.Y.,* 132 F.3d 145, 149 (2d Cir.1998) (collecting cases).

## ARGUMENT

**I. THIS COURT SHOULD GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT, AND PLAINTIFF IS ENTITLED TO JUDGMENT AS A MATTER OF LAW**

This Court should grant Plaintiff's summary judgment motion because there is no genuine issue of material fact, and Plaintiff is entitled to judgment in his favor as a matter of law. Under the FLSA and NYLL, employees must be paid at least the minimum wage rate for each hour worked, be paid at least the one-and-one-half times their regular rate for each hour worked over

forty (40) hours worked in a week, and be reimbursed for tools of the trade. *See* 29 U.S.C. §§ 206(a)(1), 207(a)(1), 216(b); 29 C.F.R. § 531.35; N.Y. Lab. L. §§ 652.1, 198, 663.1; 12 N.Y.C.R.R. §§ 146-1.4, 146-2.7. Further, under the NYLL, employees must receive all their promised wages, an extra hour's pay for each day their spread of time exceeds 10 hours, a wage notice at time of hire containing certain information, and a wage statement containing certain information with each payment of wages. *See* N.Y. Lab. L. §§ 191.1, 195.1, 195.3, 198.1-a, 198.1-b, 198.1-d.

Here, Plaintiff regularly worked 50 hours per week (10 hours per day over a spread of 11 hours, of which more than 2 hours was spent on non-tipped side work, 5 days per week). For this, he was promised a flat salary of $50.00 per day and actually paid $45.00 per day (amounting to $225.00 per week). He was given a check for $1,500.00 each month, and had to kick back the difference between his $45.00 per day times the number of days he worked over the course of each month, and the $1,500.00, in cash. Plaintiff's salary of $225.00 per week, divided by 40 hours, amounts to a wage of $5.63 per hour, less than either the federal or state minimum wages, of which Defendants had knowledge from their posting of New York Department of Labor notices. However, Defendants were not entitled to take a tip credit, because they failed to provide Plaintiff adequate notice under either FLSA, which requires at least a verbal explanation of the tip credit, or NYLL, which requires Plaintiff to be furnished a written explanation in his primary language. Plaintiff's salary of $225.00 per week did not compensate him for hours each week in excess of 40, did not compensate him for those hours at a rate of 1.5 times his the higher of the minimum wage or his regular rate of $5.63 per hour, and did not compensate him at a rate of 1 hour's pay at the New York minimum wage for days where his spread of time exceeded 10 hours. Plaintiff was shown and signed a blank wage notice at his time of hire, but all the information was filled in after he signed and he did not receive a copy. Plaintiff received no wage statements. Defendants kept no

records of Plaintiff's wages and hours, other than making false quarterly reports of his wages to the New York State Department of Taxation.

### a.    DEFENDANTS WERE PLAINTIFFS' EMPLOYERS UNDER FLSA AND NYLL

The FLSA defines "employee" broadly as "any individual employed by an employer," and "employ" as "to suffer or permit to work. 29 U.S.C. §§ 203(e)(1), 203(g). "Employer" is further defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id.* § 203(d). The Second Circuit has adopted an expansive view of the employment relationship covered by the FLSA, recognizing that the FLSA is a "remedial" statute purposefully "written in the broadest possible terms so that the minimum wage provisions would have the widest possible impact in the economy." *Carter v. Dutchess Cmty. College*, 735 F.2d 8, 12 (2d Cir. 1984).

In determining whether an employment relationship exists for purposes of the FLSA, courts evaluate the "economic reality" of the relationship, looking beyond rigid corporate constructs to consider the functional realities facing employees. *See Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961). The Second Circuit has declined to circumscribe this analysis to a precise set of factors, noting instead that a district court is "free to consider any [] factors it deems relevant to its assessment of the economic realities." *Zheng v. Liberty Apparel Co., Inc.*, 355 F.3d 61, 71–72 (2d Cir. 2003). Since the economic reality test is a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances," the Circuit has clarified that different sets of factors apply to different "factual challenges posed by particular cases." *Barfield v. New York City Health & Hosp. Corp.*, 537 F.3d 132, 141–42 (2d Cir. 2008).

In *Barfield*, the Second Circuit identified three formulations of the economic reality test in its jurisprudence: (1) whether workers should be viewed as independent contractors or employees, (2) whether a formal employment relationship existed between the employees and a putative employer, and (3) whether an entity lacking formal control nevertheless could be considered a joint

employer due to the "functional control" it exercised over workers. *Id.* at 143. The question of independent contractor status is not at issue here.

When determining whether a particular defendant served as an "employer" under the FLSA, the inquiry is even broader. The Second Circuit has set out four core factors signifying formal control by an employer: "whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter*, 735 F.2d at 12 n.3 (internal citations omitted).

"Satisfying the four *Carter* factors 'may be sufficient to establish joint employment under the FLSA [but] it is not necessary to establish joint employment." *Fernandez v. HR Parking, Inc.*, 407 F. Supp. 3d 445, 456 (S.D.N.Y. 2019) (citing *Zheng*, 355 F.3d at 79, *Grenawalt v. AT&T Mobility LLC*, 642 Fed. Appx. 36, 37 (2d Cir. 2016)). Even in the absence of the formal control described by the *Carter* factors, a defendant may be characterized as an employer for FLSA purposes if he or she exercises functional control over the workers in question. In addition to the *Carter* factors, six additional factors may be indicative of functional control: "(1) whether [a defendant's] premises and equipment were used for the plaintiff's work; (2) whether the [defendants] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to the [defendant's] process of production; (4) whether responsibility… could pass from one subcontractor to another with another without material changes; (5) the degree to which the [defendants] or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the defendants." *Zheng*, 355 F.3d at 72. In this context as well, the economic reality test does not depend on these or any other isolated factors, as "any relevant evidence may be examined so as to avoid

having the test confined to a narrow legalistic definition." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).

It is undisputed that Shi worked for TL & CG Inc., that Guiyong Chen was the sole owner and President of TL & CG Inc., and that he fulfilled each of the *Carter* factors. *See* 56.1 Statement ¶¶ 7–9, 14. Guiyong Chen's hiring of Shi, including his providing Shi with a blank wage notice (*see* Shi Aff. 2 ¶ 15) demonstrates his authority to hire and fire, his writing Shi's paychecks from TL & CG's bank account demonstrates his financial control over TL & CG Inc. and authority to determine Shi's pay, and his arrangement of Shi's working schedule demonstrates his supervisory authority over Shi. *See* 56.1 Statement ¶¶ 10–11. Likewise, Yi Nen Chen's arrangement, from time to time, of Shi's working schedule demonstrates her supervisory authority over Shi, as does her giving Shi his delivery assignments. Shi observed her hiring and firing other workers. *See* 56.1 Statement ¶ 13. Courts applying the broad economic reality test have held similar facts sufficient to reach a finding of employer status *See*, *e.g.*, *Chen*, 2019 U.S. Dist. LEXIS 110701, at *16–17.

### b.     TL & CG Inc. Was a Covered Employer Under FLSA

In order to be a covered employer under the FLSA, an enterprise must be "engaged in commerce" such that it "(i) has employees engaged in commerce or in the production of goods for commerce, or… handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.00." 29 U.S.C. § 203(s)(1)(A). Here, it is undisputed that TL & CG Inc. meets all of these criteria. *See* 56.1 Statement ¶¶ 4–5.

### c.     Plaintiff Was Not Paid for his Hours in Excess of 40 Each week

"'There is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's work-week; the burden is on the employer to rebut this presumption with evidence that the employer and employee had an agreement

that the employee's weekly compensation would cover a different number of hours." *Ochoa v. Aucay General Construction, Inc.*, No. 19-cv-03866 (ST), 2020 U.S. Dist. LEXIS 1747071, at \*15 (E.D.N.Y. Sep. 15, 2020). Both the FLSA and the NYLL carry this rebuttable presumption. *See Perez Garcia v. Hirakegoma Inc.*, No. 17-cv-07608 (SLC), 2020 U.S. Dist. LEXIS 40637, at \*18 (S.D.N.Y. Mar. 9, 2020). Defendants are unable to rebut that presumption because Defendants did not keep records of Plaintiff's working time or pay.

Additionally, the Wage Order provides that a hospitality industry employee may not be paid a salary and must be paid an hourly wage, and instructs this Court to divide a restaurant employee's weekly salary by 40 hours to determine his regular rate for the purpose of overtime. *See* 12 N.Y.C.R.R. §§ 146-2.5, 3.5. District Courts make this division by 40 hours to determine plaintiffs' regular rates even when defendants can rebut the presumption that a salary only covers 40 hours. *See, e.g.*, *Quiroz v. Luigi's Dolceria, Inc.*, No. 14-cv-00871, 2016 U.S. Dist. LEXIS 64662, at \*13 (E.D.N.Y. May 17, 2016). It follows that if an employee is only paid for the first 40 hours of work, and they worked more than 40 hours, they were paid nothing for the difference between their hours and 40.

### d.    PLAINTIFF WAS NOT PAID HIS PROMISED WAGE

"Under NYLL, a plaintiff is to be paid the promised rate for every hour worked." *Meda v. Kogda*, No. 17-cv-06853 (LGS) (KNF), 2019 U.S. Dist. LEXIS 150694, at \*11 (S.D.N.Y. Sep. 3, 2019) (citing N.Y. Lab. L. § 191). "Where a non-exempt employee has an agreement with his or her employer to be paid at a rate greater than the minimum wage, several courts have found that the failure to pay the promised rate is a violation of NYLL § 191, entitling the employee to damages under NYLL § 198." *Cavalotti v. Daddyo's BBQ, Inc.*, No. 15-cv-06469 (PKC) (VMS), 2018 U.S. Dist. LEXIS 154918, at \*34 (E.D.N.Y. Sep. 8, 2018) (collecting cases). Here, Plaintiff was promised a salary of $55.00 per day and paid $45.00 per day.

### e.     PLAINTIFF WAS NOT PAID MINIMUM WAGE

### 1.     Defendants Were Not Entitled to a Tip Credit

Both the FLSA and NYLL require an employer to pay its employees minimum wage. *See* 29 U.S.C. § 206(a); N.Y. Lab. L. § 652.1. However, both statutes "permit an employer to pay a tipped [employee] a cash wage that is lower than the statutory minimum wage, provided that the cash wage and the employee's tips, taken together, are at least equivalent to the minimum wage." *Inclan v. N.Y. Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015) (citing 29 U.S.C. §§ 203(m), 206(a)(1); 12 N.Y.C.R.R. § 146-1.3).

Under the FLSA, an employer must satisfy two requirements to take advantage of this tip credit. "(i) the employer must have informed the employee of the Section 203(m) tip credit provisions, and (ii) the employee must have either retained all tips received or participated in a permissible tip pool." *Zhou v. Aberdeen Dim Sum & Seafood Inc.*, No. 14-cv-02014, 2016 U.S. Dist. LEXIS 147337, at *5 (S.D.N.Y. Oct. 24, 2016). "These prerequisites are strictly construed and must be satisfied even if the employee received tips at least equivalent to the minimum wage." *Chen*, 2019 U.S. Dist. LEXIS 110701, at *18 (internal punctuation and citation omitted).

With respect to the notice requirement "[e]mployers bear the burden of showing that they satisfied the FLSA's notice requirement by, for example, providing employees with a copy of § 2003(m) and informing employees that their tips will be used as a credit against the minimum wage as permitted by law." *He v. Home on 8th Corp.*, No. 09-cv-05630, 2014 U.S. dist. LEXIS 114605, at *7 (S.D.N.Y. Aug. 13, 2014) (internal punctuation and citations omitted). "If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage." *Inclan*, 95 F. Supp. 3d at 497 (internal punctuation and citations omitted); *see also Hernandez v. JRPAC Inc.*, No. 14-cv-04176 (PAE), 2016 U.S. Dist. LEXIS 75430, at *76 (S.D.N.Y. June 9, 2016)

("[D]efendants have not complied with the notice provision under FLSA and therefore cannot avail themselves of a tip credit to satisfy their minimum wage obligations… [because although] the delivery workers, upon their hiring, were informed that they would be paid a fixed weekly wage and tips, [the defendant] never informed the employees that it intended to use the tips the workers received to satisfy any part of its minimum wage obligations."); *Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 461, 67 (S.D.N.Y. 2015) (crediting the plaintiffs' account that there was no discussion about tip credit and, therefore, finding that the defendants were not entitled to take a tip credit).

"The NYLL has even more stringent notice requirements. An employer may not take a tip credit under the NYLL unless the employer has given the employee *written* notice stating: (1) the amount of tip credit to be taken from the basic minimum hourly rate; and (2) that extra pay is required if tips are insufficient to bring the employee up to the basic minimum hourly rate." *Chen*, at *19 (citing 12 N.Y.C.R.R. §§ 1.3, 2.2(a)).

Here, Defendants cannot satisfy either burden, because Plaintiff has shown that he was not explained that tips would be applied as a tip credit, because Plaintiff has shown that the only written wage notice he was furnished a copy of was blank and did not set forth a tip credit amount, because Plaintiff's calculated hourly wage (see below) is below the post-tip-credit New York minimum wage, and because Defendants purported to take a tip credit that left Plaintiff's purported hourly wage on the wage notices below the applicable minimum wage.

### 2. Plaintiff's Calculated Hourly Wage Is Less than the Federal and New York Minimum Wages

$225.00 divided by either 50 hours (Plaintiff's actual hours worked) or 40 hours (under the rebuttable presumption and as directed by the Wage Order in order to find his regular rate) falls

below the pre-tip credit federal and state minimum wages and below the post-tip credit state minimum wages. *See* 29 U.S.C. § 206; 12 N.Y.C.R.R. §§ 146-1.2(a)(1)(i)(a), 146-1.3(a)(1)(i)(a), 12 N.Y.C.R.R. § 146-1.4; *see also* 12 N.Y.C.R.R. §§ 146-3.3, 3.4(a) (delivery workers like Plaintiff are service employees and not food service workers)

### f. PLAINTIFF WAS NOT PAID OVERTIME

"To establish liability under the FLSA on a claim for unpaid overtime," including for unpaid hours spent working off the clock, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) (citations omitted); *see also*, 29 C.F.R. § 785.11 (where an "employer knows or has reason to believe that [an employee] is continuing to work[,] the time is working time"). Supervisor knowledge of unpaid working time, and unpaid overtime, where there was a time recording system in place, has been imputed to the employer as actual or constructive knowledge. *See Lynch v. City of New York*, 291 F. Supp. 3d 537, 550–51 (S.D.N.Y. 2018).

Here, Plaintiffs' hours were not recorded, but Guiqing Chen and Yi Nen Chen were aware that Plaintiff worked overtime because Guiqing Chen told him his hours per day and both determined his days per week. Accordingly, Plaintiffs are entitled to establish their hours from their recollection. *See Kuebel*, 643 F.3d at 362. Plaintiff did not receive any notice that his daily salary was intended to include overtime, and that he was paid the same for his fifth day of work each week (which would have been all overtime) as for his first through fourth highly suggests that it was not.

### g. PLAINTIFF WAS NOT PAID SPREAD OF TIME

The Wage Order entitles employees to one additional hour of pay at the minimum hourly wage when the interval between the beginning and end of an employee's workday exceeds 10

hours. 12 N.Y.C.R.R. § 146-1.6. As with overtime Plaintiff did not receive any notice that his daily salary was intended to include it.

### h. PLAINTIFF WAS NOT FURNISHED WAGE NOTICES OR WAGE STATEMENTS

Under the NYLL, employers must provide employees with wage notices at the time of hiring. N.Y. Lab. L. § 195.1. Section 195.1 mandates that "[e]very employer shall… provide his or her employees, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of hiring, a notice containing" several categories of information, including "the rate or rates of pay and basis thereof…; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; … the regular pay day designated by the employer," and "the physical address of the employer's main office." *Id.*

Additionally, the NYLL requires employers to provide their employees with paystubs on each pay day that list "the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages." N.Y. Lab. L. § 195.3.

As discussed above, Plaintiff was never given a filled-out wage notice, or paystubs, and Defendants offer only records of wage notices that were filled out after Plaintiff's signature.

### i. PLAINTIFF WAS NOT REIMBURSED FOR TOOLS OF THE TRADE

Plaintiff was required to purchase and use electric bicycles to make deliveries. "An employer violates the FLSA if it requires an employee to purchase 'tools of the trade which will be used in or are specifically required for the performance of the employer's particular work' and 'the cost of such tools [purchased by the employee] cuts into the minimum or overtime wages required

to be paid to [the employee].'" *Salinas*, 123 F. Supp. 3d at 476 (quoting 29 C.F.R. § 531.35). Similarly, under the Wage Order, "[i]f an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage." 12 N.Y.C.R.R § 146-2.7(c).

"Other courts in this District have found that bicycles qualify as tools of the trade under the FLSA for delivery workers, such that delivery workers' expenses related to the purchase and maintenance of bicycles formed part of their damages under factual circumstances similar to those here." *Hernandez*, 2016 U.S. Dist. LEXIS 75430, at *96 (S.D.N.Y. June 9, 2016); *see also Lin v. Benihana Nat'l Corp.*,755 F. Supp. 2d 504, 511 (S.D.N.Y. 2011) ("Vehicles such as bicycles… are considered tools of the trade if employees are required to possess and utilize them in the course of their employment." (internal quotation marks and citation omitted)).

Here, Plaintiff was required to use an electric bicycle as part of his delivery job such that he had to a purchase replacement bicycle and parts when his initial bicycle was stolen, and his wage was already below the minimum wage even before he made that purchase.

### j.    PLAINTIFF IS ENTITLED TO LIQUIDATED DAMAGES FOR DEFENDANTS' WILLFUL AND MALICIOUS CONDUCT

Liquidated damages in the amount of 100% of the unpaid wages under the FLSA are mandatory. *See* 29 U.S.C. § 216(b) ("any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages"). The employer can make this award discretionary, however, by a showing of good faith. *See* 29 U.S.C. § 260. An employer demonstrates good faith by "show[ing] that it took active steps to ascertain the dictates of the FLSA and to comply with them." *Barfield*, 537 F.3d 150. "Employer ignorance of the law is insufficient to establish good

faith, and adherence to industry practice, when such practice violates the FLSA, is likewise insufficient." *Griffon v. Astro Moving & Storage Co.*, No. 11-cv-01844 (MKB), 2015 U.S. Dist. LEXIS 43326, at *6 (E.D.N.Y. Mar. 31, 2015). Here, Defendants have not met this "difficult" burden (*see Barfield*, 537 F.3d 150), and thus an award of liquidated damages is mandatory. Liquidated damages should be awarded in an amount equal to the unpaid minimum wages and overtime. *See* 29 U.S.C. § 216(b).

The NYLL also provides for a liquidated damages award unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law. *McLean v. Garage Mgmt. Corp.*, 2012 U.S. Dist. LEXIS 55425, at *21 (S.D.N.Y. April 19, 2012) (quoting NYLL § 198(1-a)). The pre-amendment willfulness standard is the same as the FLSA's willfulness standard. *Id.* ("the NYLL willfulness' standard under the pre-amendment provision 'does not appreciably differ from the FLSA's willfulness standard'") (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011)). The post-amendment good-faith standard is the same as the FLSA's good-faith standard for liquidated damages.

Defendants here ascertained the requirements of the NYLL and posted them (in English) in the restaurant, but having that knowledge, willfully failed to comply. Their willfulness can be shown from the fact that on Plaintiff's falsified wage statements they affirmatively listed a wage less than the tipped minimum wage for service employees. And they failed to keep records of Plaintiff's pay or hours, which is more than sufficient for a finding of bad faith. *See Chen*, 2019 U.S. Dist. LEXIS 110701, at *34–35 (finding handwritten pay records that did not cover Plaintiff's entire pay period and did not clearly pertain to period were insufficient to establish good faith).

Given the uncontroverted evidence of Defendants' willfulness and lack of good faith, Plaintiffs are entitled to liquidated damages under the NYLL. The NYLL was amended effective

April 9, 2011, increasing the recoverable amount of liquidated damages for unpaid wages to 100 percent; thus, liquidated damages under the NYLL are computed at 100% of the unpaid wages. NYLL § 663(1). Because Plaintiff may not recover both FLSA and NYLL liquidated damages for overlapping periods of time, *Choudhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59 (2d Cir. 2016) (rejecting cumulative recovery under FLSA and NYLL), Plaintiff requests only NYLL liquidated damages.

### k. PLAINTIFF IS ENTITLED TO PREJUDGMENT INTEREST

Plaintiffs also seek an award of prejudgment interest on the New York law claims for unpaid minimum wages and overtime wages. Under New York law, the court may award prejudgment interest pursuant to NYCPLR § 5001 on an award of back pay. *See McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.*, 176 Misc. 2d 325, 336 (N.Y. County 1997). Under New York law, prejudgment interest compensates the plaintiff for the defendant's interest-free use of the plaintiff's money. *See Gierlinger v. Gleason*, 160 F.3d 858, 874 (2d Cir. 1998); *Chandler v. Bombardier Capital, Inc.*, 44 F.3d 80, 83 (2d Cir. 1994); *Reilly v. Natwest Mkts. Group,* 181 F.3d 253, 265 (2d Cir. 1999), *cert. denied*, 528 U.S. 1119 (2000). In addition, under New York law, prejudgment interest can be awarded in addition to liquidated damages. This is because under New York law liquidated damages are considered a penalty, a sanction for willfully failing to pay wages. *Carter v. Frito-Lay, Inc.*, 425 N.Y.S. 2d 115, 115 (1st Dep't 1980), *aff'd*, 52 N.Y.2d 994, 438 N.Y.S.2d 80 (1981). Under NYCPLR § 5004, Plaintiffs are entitled to a prejudgment interest rate of nine percent per annum simple interest.

### l. PLAINTIFFS ARE ENTITLED TO REASONABLE ATTORNEY FEES

FLSA and NYLL both contain fee-shifting provisions for actions to recover unpaid wages. FLSA 29 U.S.C. § 216(b) ("the court in such action shall, in addition to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs

of the action"); NYLL § 663(1) ("[An employee] may recover … costs and such reasonable attorney's fees as may be allowed by the court").

## <u>CONCLUSION</u>

For the reasons set forth above, this Court should grant summary judgment in Plaintiffs' favor and grant all plaintiffs' causes of action alleged in the Complaint and discussed above.

Dated: Flushing, NY
September 30, 2021

TROY LAW, PLLC

_/s/ Aaron B. Schweitzer_
Aaron B. Schweitzer
41-25 Kissena Boulevard
Suite 103
Flushing, NY 11355
Tel: (718) 762-1324
troylaw@troypllc.com
*Attorneys for Plaintiff*