UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __ 7/11/2022
```

YUEFENG SHI,

                                        Plaintiff,                    19-CV-08502 (SN)

                        -against-                                     OPINION & ORDER

TL & CG INC., et al.,

                                        Defendants.

-----------------------------------------------------------------X

**SARAH NETBURN, United States Magistrate Judge:**

        From February 2018 until July 2019, Plaintiff Yuefeng Shi worked as a deliveryman for

TL & CG Inc. d/b/a Han Sushi and its owners/operators Guoyong Chen a/k/a Guo Yong Chen,

Guoqing Chen a/k/a Guo Qing Chen a/k/a Peter Chen, Jian Xiang Yang a/k/a Jianxiang Yang,

and Yi Nen Chen a/k/a Yinen Chen (collectively, "the Defendants").[1] Defendants' compensation

practices allegedly violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and

the New York Labor Law ("NYLL"). Plaintiff now moves for summary judgment on all claims

and seeks compensatory, statutory, and liquidated damages, prejudgment interest, and an award

of reasonable attorneys' fees and costs.[2] The motion is DENIED.

---

[1] Plaintiff also named Defendant Jian Xiang Yang a/k/a Jianxiang Yang in his complaint but does not move
for summary judgment against him. Because Jianxiang Yang has not appeared, Plaintiff plans to move
separately for a default judgment against him. See ECF No. 79 (Pl. Br.) at 1 n.1.

[2] On February 28, 2020, Plaintiff moved for conditional certification of a FLSA collective. ECF No. 32.
The Court granted that motion, ECF No. 55, and authorized Plaintiff's proposed notice and consent to join,
ECF No. 59. There is no evidence that any opt-in plaintiffs have sought to join the case. Accordingly, I
resolve Plaintiff's motion for summary judgment as to him only.

**BACKGROUND**

The following facts are taken from Plaintiff's Statement of Undisputed Material Facts, ECF No. 78 Ex. 10 (Pl.'s 56.1), and Defendants' Counterstatement of Undisputed Material Facts, ECF No. 82 (Defs.' Counter 56.1), and other documents, including the record and the Court's prior opinions. See Fed. R. Civ. P. 56(c)(3).

Plaintiff worked as a deliveryman at Han Sushi from February 8, 2018, until October 4, 2018, and again from November 21, 2018, to July 30, 2019. Pl.'s 56.1 ¶ 14. He was not exempt from receiving overtime. Id. ¶ 15. During the period relevant to this case, TL & CG Inc. was a business engaged in interstate commerce with gross sales in excess of $500,000 per year, was incorporated in New York, and had more than 10 employees at all times. Id. ¶¶ 3-6. Guoyong Chen was president of TL & CG Inc. and owned 100% of its shares. Id. ¶¶ 7-8. He had the power to hire and fire employees of TL & CG Inc., supervised and controlled employee work schedules and conditions of employment at Han Sushi, determined employees' rates and methods of payment, and maintained employee records for TL & CG Inc. Id. ¶ 9.

Plaintiff alleges that Guoqing Chen hired him, paid him, and arranged his working schedule. Id. ¶ 10. Citing two checks dated March 31, 2018, and July 31, 2019, Plaintiff also claims that Guoqing Chen signed his paychecks. Id. ¶ 11; ECF No. 78 Ex. 6. Defendants respond that Guoyong Chen was the person who interviewed, hired, and paid Plaintiff and who provided him with his wage notice, but that sometimes, when Guoyong Chen was not present, Guoqing Chen would sign checks for restaurant deliveries or wage payment. Defs.' Counter 56.1 ¶¶ 10-11. Additionally, Plaintiff claims that Guoqing Chen's wife, Yinen Chen, hired and fired workers at Han Sushi and from time to time arranged his schedule. Pl.'s 56.1 ¶ 13. Defendants respond that she was a part-time cashier, not a manager or supervisor, did not hire anyone, could not fire

2

anyone, and had no role in determining employees' schedules. Defs.' Counter 56.1 ¶ 13. Only Guoyong Chen authorized time off or schedule changes. Id.

At the time of his hiring (approximately February 8, 2018), Plaintiff says that he was shown a blank wage notice that he signed, which Defendants filled in after the fact and did not provide him with a copy. Pl.'s 56.1 ¶ 16; see ECF No. 78 Ex. 5 (blank, undated wage notice with Plaintiff's signature; partially completed wage notice with Plaintiff's signature dated February 6, 2018; partially completed wage notice with Plaintiff's signature dated January 1, 2019). Defendants retort that Plaintiff did sign a proper wage notice when he was first hired and again when his pay rate changed. Defs.' Counter 56.1 ¶ 16; see ECF No. 80 Ex. A (partially completed wage notice with Plaintiff's signature dated February 6, 2018; partially completed wage notice with Plaintiff's signature dated January 1, 2019).

The February 6, 2018 wage notice stated that Plaintiff's pay rate was $10 per hour, his overtime pay rate was $16 per hour, $2 per hour would be taken as a tip credit, and $3.35 would be taken per meal as a meal allowance. ECF No. 78 Ex. 5 at 2. The wage notice did not specify a regular payday or pay period. Id. The New York Department of Labor poster in Han Sushi announcing the minimum wage for December 31, 2017, through December 30, 2018, provided that, for similarly situated hospitality industry employees, the minimum wage was $13 per hour, and $10.85 per hour for service employees after the permitted tip credit. ECF No. 78 Ex. 4 at 1. The overtime wage for similarly situated hospitality industry employees was $19.50, and $17.35 for service employees after the permitted tip credit. Id.; see 12 N.Y.C.R.R. §§ 146-1.3(a)(1)(i)(a), 146.-1.4. Defendants did not record, or keep and maintain records of, Plaintiff's working time, and he was not provided a New York law-compliant wage statement during his employment. Pl.'s 56.1 ¶¶ 30, 34.

3

The January 1, 2019 wage notice stated that Plaintiff's pay rate was $11.25 per hour, his overtime pay rate was $18 per hour, $2.25 per hour would be taken as a tip credit, and $3.75 would be taken per meal as a meal allowance. ECF No. 78 Ex. 5 at 3. The wage notice did not specify a regular payday or pay period. Id. The New York Department of Labor poster in Han Sushi announcing the minimum wage for December 31, 2018, through December 30, 2019, provided that, for similarly situated hospitality industry employees, the minimum wage was $15 per hour, and $12.75 per hour for service employees after the permitted tip credit. ECF No. 78 Ex. 4 at 2. The overtime wage for similarly situated hospitality industry employees was $22.50, and $20.25 for service employees after the permitted tip credit. Id.; see 12 N.Y.C.R.R. §§ 146-1.3(a)(1)(i)(a), 146.-1.4.

Plaintiff claims that he was promised a flat salary of $50 per day but was paid a flat salary of $45 per day (or $225 per five-day week) that did not include pay for overtime or spread of hours pay. Pl.'s 56.1 ¶¶ 24-25, 28. He also says that he regularly worked 50 hours per week, from 11:00 a.m. to 10:00 p.m. five days a week (with a single one-hour break), and regularly worked over 10 hours each day. Id. ¶¶ 31-32. He claims that he regularly spent more than two hours per day performing non-tipped work. Id. ¶ 33.

Defendants disagree. They claim that Plaintiff worked five days a week, from 11:00 a.m. to 10:00 p.m. with three breaks totaling two hours (one half-hour for lunch, one half-hour for dinner, and a one-hour afternoon break). Defs.' Counter 56.1 ¶¶ 18, 31. His pay was calculated based on those breaks and the meal allowance deduction. Id. He received tips and did not have to return any of his pay to any Defendant. Id. He had no duties unrelated to his deliveries. Id. ¶ 33.

Plaintiff was paid via checks for $1,500 per month. Pl.'s 56.1 ¶ 26. He was paid $4,500 in Quarter 2 of 2018, $6,751 in Quarter 3 of 2018, $6,751 in Quarter 4 of 2018, $4,500 in Quarter 1

of 2019, $4,498 in Quarter 2 of 2019, and $1,499 in Quarter 3 of 2019. See ECF No. 78 Ex. 3 (TL & CG Inc. quarterly wage reporting filings). Plaintiff alleges that he had to "kick back" the difference between his pay by check and the $45 that he received per day. Pl.'s 56.1 ¶ 27. Defendants deny this. Defs.' Counter 56.1 ¶ 27.

Plaintiff claims that the February 2018 and January 2019 wage notices misrepresented his rate of pay, as did TL & CG Inc.'s quarterly wage reporting filings. Pl.'s 56.1 ¶¶ 23, 29. Defendants reiterate that Plaintiff's pay was calculated based on his work schedule and the meal allowance deduction, and that he received tips but did not have to return any of his pay to any Defendant. Defs.' Counter 56.1 ¶¶ 23, 29.

Finally, Plaintiff claims that, in order to do his job, he had to purchase and maintain an electric bicycle to make deliveries. Pl.'s 56.1 ¶ 35. He spent $1,500 on his first electric bicycle, $800 on a second-hand replacement, and $250 on a battery. Id. He was not reimbursed. Id. Defendants respond that he was not required to use his electric bicycle for work, and that he had an electric bicycle before he came to work at Han Sushi. Defs.' Counter 56.1 ¶ 35.

## DISCUSSION

Plaintiff moves for summary judgment on the following grounds: (i) the liability of Defendants Guoqing Chen and Yinen Chen as employers under both the FLSA and the NYLL; (ii) Defendants' failure to pay overtime under the FLSA and NYLL; (iii) Defendants' failure to pay minimum wage under the FLSA and NYLL; (iv) Defendants' failure to pay "spread of hours" pay under the NYLL; (v) Defendants' failure to pay the promised wage under the NYLL; (vi) Defendants' failure to provide wage notices or wage statements under the NYLL; (vii) Defendants' failure to reimburse Plaintiff for tools of the trade; (viii) Plaintiff's entitlement to liquidated damages on his FLSA and NYLL claims; (ix) Plaintiff's entitlement to prejudgment

interest on his NYLL claims; and (x) Plaintiff's entitlement to reasonable attorneys' fees and costs.

## I.      Summary Judgment Standard of Review

A "court shall grant summary judgment if the movant shows that there is no *genuine* dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Holt v. KMI-Continental, Inc., 95 F.3d 123, 128 (2d Cir. 1996). Because the moving party bears the burden of showing that there is no genuine issue of material fact, the court "must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." L.B. Foster Co. v. Am. Piles, Inc., 138 F.3d 81, 87 (2d Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "It is the movant's burden to show that no genuine factual dispute exists." Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP, 735 F.3d 114, 123 (2d Cir. 2013) (cleaned up). Then, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Id. The non-moving party must cite to "particular parts of materials in the record" or demonstrate "that the materials cited [by the movant] do not establish the absence . . . of a genuine dispute" as to a material fact. Fed. R. Civ. P. 56(c)(1); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly

supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

At summary judgment, the court should consider only evidence that would be admissible at trial. See Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits . . . to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" DiStiso v. Cook, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

"[D]istrict courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." Jeffreys v. City of New York, 426 F.3d 549, 551 (2d Cir. 2005); see also Vital v. Interfaith Med. Ctr., 168 F.3d 615, 622 (2d Cir. 1999) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (citation omitted)). Where the evidence presents "a question of 'he said, she said,'" the court "cannot . . . take a side at the summary judgment stage." Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 726 (2d Cir. 2010); see also Kassel v. City of Middletown, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017) (noting that "it is not the role of the [c]ourt at summary judgment to resolve [a] factual clash"). Even if the non-movant's evidence is "thin, [a non-movant's] own sworn statement is adequate to counter summary judgment." Scott v. Coughlin, 344 F.3d 282, 290-91 (2d Cir. 2003) (holding that "[t]he credibility of [the non-movant's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact").

## II.    Liability Under the FLSA and NYLL

To prevail on a FLSA claim, a plaintiff must show that "(1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." Pelgrift v. 335 W. 41st Tavern Inc., No. 14-cv-8934 (AJN), 2017 WL 4712482, at *7 (S.D.N.Y. Sept. 28, 2017) (quoting Jiaren Wei v. Lingtou Zhengs Corp., No. 13-cv-5164 (FB)(CLP), 2015 WL 739943, at *5 (E.D.N.Y. Feb. 20, 2005)). An "enterprise engaged in commerce" is an enterprise that "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and that has an "annual gross volume of sales made or business done . . . not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii). The parties do not dispute that TL & CG Inc. meets these criteria, that Plaintiff was an employee, or that he is not exempt from the FLSA's overtime requirement.

The NYLL's definition of employee and employer are almost identical to the FLSA's, but NYLL does not require that a defendant achieve a certain minimum in sales to be liable. See Pelgrift, 2017 WL 4712482, at *7; see also N.Y. Lab. Law §§ 651(5)-(6). If Defendants are liable as employers for FLSA purposes, they are also liable under NYLL. See Pelgrift, 2017 WL 4712482, at *7 (noting that the FLSA and NYLL tests for individual defendants are not meaningfully different). Under both laws, each Defendant is jointly and severally liable for any damages. See Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011).

## III.    Individual Liability of Defendants Guoqing Chen and Yinen Chen

Plaintiff argues that Defendants Guoqing Chen and Yinen Chen qualified as his "employers" at Han Sushi, and therefore can be held individually liable under FLSA and NYLL.

Personal liability may be imposed on employers for wage and hour violations under both the FLSA and NYLL. Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003). Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer." Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999) (quoting Falk v. Brennan, 414 U.S. 190, 195 (1973)); see also Ansoumana, 255 F. Supp. 2d at 192 (quoting Reich v. Circle C Invs., Inc., 998 F.2d 324, 329 (5th Cir. 1993) ("[T]he FLSA's definition of employer is sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees.")). For FLSA purposes, the term "employer" is treated as a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 141-42 (2d Cir. 2008). Again, the tests for individual defendants under the FLSA and NYLL are not meaningfully different. See Pelgrift, 2017 WL 4712482, at *7.

In the Second Circuit, an employment relationship exists under the FLSA when the "economic reality" is such that the "alleged employer possessed the power to control the workers in question." Herman, 172 F.3d at 139 (citing Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)). An individual need not possess "formal control" over a worker to qualify as an employer; "functional control" is sufficient. Zheng v. Liberty Apparel Co., 355 F.3d 61, 72 (2d Cir. 2003).

In considering whether an employer exercised "formal control" over a worker, the court considers four factors: "whether the alleged employer (1) had the power to hire and fire the

employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." <u>Carter</u>, 735 F.2d at 12 (citation omitted). To determine if an employer had "functional control" over workers, the court weighs six "nonexclusive and overlapping" factors:

> (1) whether [a defendant]'s premises and equipment were used for the plaintiffs' work; (2) whether the [defendant] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the defendant]'s process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [defendants] or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [defendants].

<u>Zheng</u>, 355 F.3d at 72, 75. "Case law has recognized that the <u>Zheng</u> factors 'are most relevant in the context of subcontractor relationships.'" <u>Fernandez v. HR Parking Inc.</u>, 407 F. Supp. 3d 445, 451 (S.D.N.Y. 2019) (citation omitted). The inquiry under the <u>Zheng</u> fifth factor, the degree of control and supervision, "is largely the same as the inquiry under the second formal control factor and is the most relevant factor in determining whether a purported joint employer exercises functional control over plaintiffs." <u>Martin v. Sprint United Mgmt. Co.</u>, 273 F. Supp. 3d 404, 433 (S.D.N.Y. 2017) (cleaned up).

The parties dispute the first three <u>Carter</u> factors: whether either Guoqing Chen or Yinen Chen had the power to hire and fire employees, set wages, schedules, or the method of payment, or otherwise directed Plaintiff in his work. Plaintiff provides no support that they kept or had the power to keep any employment records concerning him. The Court cannot conclude as a matter of law that either Guoqing Chen or Yinen Chen exercised formal control over Plaintiff.

Similarly, even assuming that the <u>Zheng</u> factors are relevant, the parties dispute the material facts that would allow the Court to reach a conclusion as to whether Guoqing Chen and

10

Yinen Chen exercised functional control over Plaintiff: Plaintiff says Guoqing Chen signed his paychecks; Defendants say this happened only when Guoyong Chen was not present. Plaintiff says Yinen Chen hired and fired other workers and arranged his schedule from time to time; Defendants say she did not. Again, the Court cannot conclude that either Guoqing Chen or Yinen Chen exercised functional control over Plaintiff. Thus, Plaintiff has failed to show that Defendants Guoqing Chen and Yinen Chen are employers under the FLSA or NYLL. His motion for summary judgment is denied on this ground.[3]

**IV.    Plaintiff's Federal and State Wage Law Claims**

**A.  Evidence of Plaintiff's Wages and Hours Worked**

To recover unpaid minimum wages or overtime under the FLSA, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011). "When the employer has kept proper and accurate records[,] the employee may easily discharge his burden by securing the production of those records." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946). Both the FLSA and NYLL require employers to maintain records of the employee's work hours, see 29 U.S.C. § 211(c); NYLL §§ 196-a, 195(4), and that duty is non-delegable, Kuebel, 643 F.3d at 363.

On summary judgment, if an employer's records are inaccurate or inadequate, the employee may meet his burden by proving that "he has in fact performed work for which he was improperly compensated" and by "produc[ing] sufficient evidence to show the amount and

---

[3] Defendants did not cross-move for summary judgment or to dismiss the case as to either Guoqing Chen or Yinen Chen. The Court does not interpret Defendants' statement that "the case against [Guoqing Chen and Yinen Chen] should be dismissed in its entirety" as a properly made request for such relief. ECF No. 81 (Opp.) at 6.

extent of that work as a matter of just and reasonable inference." <u>Anderson</u>, 328 U.S. at 687.

"[E]stimates based on his own recollection" are sufficient. <u>Kuebel</u>, 643 F.3d at 362; <u>see also</u>

<u>Adams v. City of New York</u>, No. 16-cv-3445 (RA), 2021 WL 1791182, at *7 (S.D.N.Y. May 5,

2021) (collecting cases finding same).

      Under the FLSA, the burden then shifts to the employer to "come forward with evidence

of the precise amount of work performed or with evidence to negative the reasonableness of the

inference to be drawn from the employee's evidence." <u>Lanzetta v. Florio's Enters., Inc.</u>, 763 F.

Supp. 2d 615, 618 (S.D.N.Y. 2011) (quoting <u>Anderson</u>, 328 U.S. at 687-88). The New York

standard is more demanding: the employer must prove by a preponderance of the evidence that

the plaintiff was properly paid for the hours worked. <u>Doo Nam Yang v. ACBL Corp.</u>, 427 F.

Supp. 2d 327, 337 n.15 (S.D.N.Y. 2005); <u>see</u> <u>Jiao v. Shi Ya Chen</u>, No. 03-cv-165 (DF), 2007

WL 4944767, at *3 (S.D.N.Y. Mar. 30, 2007) (holding that the NYLL applies a more demanding

burden-shifting analysis than the FLSA—thus, if defendants cannot meet their burden under the

FLSA, they will necessarily fail under the NYLL (citing <u>Anderson</u>, 328 U.S. at 687)). Unlike the

FLSA, the NYLL "does not permit an employer to discharge this burden by undermining the

reasonableness of an employee's evidence that he was underpaid." <u>Gamero v. Koodo Sushi</u>

<u>Corp.</u>, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017), <u>aff'd</u>, 752 F. App'x 33 (2d Cir. 2018). The

employer must demonstrate that it in fact paid its employees "wages, benefits, and supplements."

N.Y. Lab. Law § 196-a(a).

      "In effect, in the absence of employer records, the employee's testimony assumes a

'rebuttable presumption of accuracy.'" <u>Garcia v. Vill. Red Rest. Corp.</u>, No. 15-cv-6292 (JCF),

2017 WL 3493148, at *1 (S.D.N.Y. Aug. 14, 2017) (quoting <u>Goett v. VI Jets Int'l, Inc.</u>, No. 14-

cv-8256 (MHD), 2015 WL 3616961, at *2 (S.D.N.Y. Apr. 22, 2015)). Under both the FLSA and

NYLL, that presumption may be rebutted where the employee's attestations are materially inconsistent with the facts and/or contradicted by the employer's witnesses. See id. at *2; see also Hernandez v. Sikka, No. 17-cv-4792 (SJF)(SIL), 2020 WL 1083706, at *6 (E.D.N.Y. Mar. 6, 2020) (noting same). The Court accordingly considers the evidence provided in both Plaintiff's and Defendants' declarations and supporting exhibits in evaluating Plaintiff's claims.

### B.  Minimum Wage, Overtime, and Spread of Hours Claims

I briefly set forth the standards for minimum wage, overtime pay, and spread of hours pay. In 2018, New York City employers with more than ten employees were required to pay their employees a minimum wage of $13 per hour, or $10.85 per hour for service employees after the permitted tip credit; in 2019, $15 per hour, and $12.50 per hour for service employees after the permitted tip credit. See N.Y. Comp. Codes R. & Regs. tit. 12 §§ 146-1.2(a)(1)(i)(*a*), 146-1.3(a)(1)(i)(*a*). To calculate a salaried employee's minimum wage, the employee's total weekly earnings are divided "by the lesser of 40 hours or the actual number hours they worked." Id. at § 146-3.5. Additionally, the FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the employee's regular rate of pay) for hours worked above 40 hours per week. See 29 U.S.C. §§ 206(a), 207(a)(1). Similarly, the NYLL requires a 150 percent premium for overtime work. 12 N.Y.C.R.R. § 142-2.2. And finally, under the NYLL, "on each day on which [an employee's] spread of hours exceeds 10, [they] shall receive one additional hour of pay at the basic minimum hourly rate." 12 N.Y.C.R.R. § 146-1.6(a).

As noted above, it is undisputed that Plaintiff's workdays lasted longer than 10 hours (so he would be entitled to spread of hours pay), but the parties dispute the number of hours that Plaintiff actually worked: Plaintiff says 50 hours per week, Defendant says 45 hours per week.

Also, the parties agree that Plaintiff received monthly checks for $1,500, but Plaintiff argues that he was actually paid $225 per week, and that he was required to "kick back" the difference between his pay by check and the $45 that he received per day if he did not work enough days during the month to earn all $1,500. See ECF No. 78 Ex. 9 (Pl. Aff.) ¶ 21. Defendants say that Plaintiff did not give back any of his pay, that he received tips, and that his pay was based on his schedule. There is also evidence that, at least in the second quarter of 2018, Plaintiff was paid $6,751 for three months' work, or approximately $2,250 per month. See ECF No. 78 Ex. 3 at 9.

These are material inconsistencies that preclude summary judgment on Plaintiff's minimum wage, overtime, and spread of hours claim under both the FLSA and NYLL. The only evidence before the Court as to Plaintiff's monthly earnings is the parties' warring affidavits, two scanned monthly checks for $1,500, and Defendants' quarterly combined withholding and wage reporting filings, some of which support the claim that Plaintiff made $1,500 per month and some of which suggest that he made more (though Plaintiff claims the filings misrepresent his earning). "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997).

If Plaintiff did indeed have to give back any of his monthly paycheck, the Court cannot determine his total monthly earnings without knowing how many days he worked every month (which, according to Plaintiff's affidavit, may have varied). And without Plaintiff's total monthly earnings, the Court cannot calculate his weekly or hourly wage, or whether he was paid enough to account for the NYLL's spread of hours pay requirement or Defendants' claimed tip credit. Accordingly, based upon the evidence before the Court, Plaintiff's motion for summary

judgment is denied as to his FLSA and NYLL minimum wage and overtime claims and as to his NYLL spread of hours claim.

### C.  Promised Wage Claim

Under the NYLL, a plaintiff can recover for unpaid time at the agreed-upon rate, even if it exceeds the minimum wage. See Kernes v. Global Structures, LLC, No. 15-cv-659 (CM)(DF), 2016 WL 880199, at *3 (S.D.N.Y. Mar. 1, 2016). Section 191 of the NYLL mandates that workers "be paid . . . in accordance with the agreed terms of employment." N.Y. Lab. Law §§ 191(1)(a)(i), 191(1)(d). Plaintiff alleges that he was promised a flat salary of $50 per day but was only paid $45 per day. As with his minimum wage, overtime, and spread of hours claims, the material inconsistencies in the record preclude summary judgment on this issue. The Court cannot determine at this juncture whether Plaintiff was indeed promised $50 per day, whether he was actually paid $45 per day, or whether he was paid more. Plaintiff's motion for summary judgment is denied as to his NYLL promised wage claim.

### D.  Wage Notice and Statement Claims

The Wage Theft Prevention Act of the NYLL requires that employers provide annual wage notices to employees hired after April 9, 2011, and to provide each employee with accurate wage statements each time wages are paid. See N.Y. Lab. Law §§ 195(1)(a) & (3). Section 195(1) requires an employer to provide employees a notice at the time of hiring, containing, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other . . . [and] allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances." N.Y. Lab. Law § 195(1)(a). Section 195(3) of the NYLL requires that employers provide employees with certain wage statement information "with every payment of wages." N.Y. Lab. Law § 195(3). An employer's failure to

comply with either section of the law makes them liable for damages for each instance that the violations occurred or continued to occur. See N.Y. Lab. Law § 198(1-b) (stating that damages for wage notice violations under § 195(1) accumulate at a rate of $50 per day, but not to exceed $5,000); § 198(1-d) (stating that damages for wage statement violations under § 195(3) accumulate at a rate of $250 per day, but not to exceed $5,000).

Even if Plaintiff did sign a wage notice when he was hired and when his pay rate changed, as Defendants argue, the wage notices submitted do not meet the NYLL's standards: they do not specify a pay period or pay date. See Galvez v. 800 Ginza Sushi Inc., No. 19-cv-8549 (JPC), 2022 WL 748286, at *16 (S.D.N.Y. Mar. 11, 2022) (noting that the wage notice "must include the employee's . . . pay period and date"). Defendants failed to comply with the NYLL's wage notice requirement. And Defendants do not dispute that Plaintiff was not provided a NYLL-compliant wage statement.

Plaintiff nevertheless lacks standing to maintain these claims. "Article III standing requires plaintiffs to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" Maddox v. Bank of N.Y. Mellon Tr. Co., N.A., 19 F.4th 58, 62 (2d Cir. 2021) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). To demonstrate an injury in fact, a plaintiff "must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical." Id. (quoting Strubel v. Comenity Bank, 842 F.3d 181, 188 (2d Cir. 2016)). While a so-called "informational injury" (i.e., failure to receive required information) can give rise to standing, see TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2214 (2021), the plaintiff must allege "downstream consequences" from failing to receive that information that show an interest in using the

information "beyond bringing [this] lawsuit," Harty v. W. Point Realty, Inc., 28 F.4th 435, 444 (2d Cir. 2022) (first quoting TransUnion, 141 S. Ct. at 2214, then quoting Laufer v. Looper, 22 F.4th 871, 881 (10th Cir. 2022)).

Plaintiff fails to allege an injury in fact sufficient to confer standing. First, Plaintiff's claimed monetary harm is purely hypothetical. He explains that Defendants' lack of notice "facilitated" the underpayments at the heart of this case and should have prevented them from claiming a tip credit. But Plaintiff has not demonstrated how or why the amount of his wage underpayment is greater than it would have been if he had been given a proper wage notice or proper wage statements, especially given that Plaintiff says the January 2019 wage notice misrepresents his rate of pay as promised by Defendants. Nor has Plaintiff identified an informational injury with consequences beyond this lawsuit. Being able to challenge his underpayment sooner would have resulted in Plaintiff bringing the same lawsuit, just earlier— and, given the length of Plaintiff's employment with Defendants (approximately 333 workdays) would not have changed the damages due to him for Defendants' violations of Sections 195(1) and 195(3). Accordingly, Plaintiff's motion for summary judgment is denied as to his NYLL wage notice and statements claim.

### E. Tools-of-the-Trade Expenses

Under the FLSA, "if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work," it is a FLSA violation in any week "when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." 29 C.F.R. § 531.35; see also 12 N.Y.C.R.R. § 146-2.7(c) ("If an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring

the employee's wage below the required minimum wage."). "Vehicles such as bicycles . . . are considered 'tools of the trade' if employees are required to possess and utilize them in the course of their employment." Guan Ming Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010) (citation omitted).

Again, material inconsistencies in the record preclude summary judgment. Plaintiff claims that he had to purchase and maintain an electric bicycle to do his job, and that he was not reimbursed for the bicycle, its replacement, or its battery. Defendants respond that he was not required to use his electric bicycle for work, and that he had an electric bicycle before he became employed at Han Sushi. The parties' disagreement goes to the core of the issue, and without weighing the parties' credibility, the Court cannot determine whether Plaintiff was required to purchase and maintain an electric bicycle to perform his duties for Defendants. Plaintiff's motion for summary judgment is denied as to his FLSA and NYLL tools-of-the-trade claim.

### F.  Liquidated Damages and Pre-Judgment Interest

Because Plaintiff is denied summary judgment on his claims for unpaid wages under the FLSA and NYLL, he may not seek liquidated damages under the FLSA and NYLL at this time.

Similarly, although New York law provides that plaintiffs are entitled to pre-judgment interest on unpaid wages, at a rate of nine percent per year, see N.Y. CPLR § 5004, prejudgment interest is available only on actual damages, Underwood v. TAFSC Hous. Dev. Fund Corp., No. 18-cv-6664 (JPO), 2019 WL 5485211, at *5 (S.D.N.Y. Oct. 25, 2019). Because Plaintiff is denied summary judgment on his claims for unpaid wages under the FLSA and NYLL, he is not entitled to pre-judgment interest at this time.

**G.  Reasonable Attorneys' Fees and Costs**

The FLSA and NYLL both entitle prevailing plaintiffs to reasonable attorneys' fees and

costs. See 29 U.S.C. § 216(b); N.Y. Lab. Law §§ 198(1-b), 198(1-d), 663. Because Plaintiff's

motion for summary judgment is denied, he is not entitled to attorneys' fees or costs under either

the FLSA or NYLL at this time.

## CONCLUSION

Plaintiff's motion for summary judgment is DENIED. The Clerk of Court is respectfully

requested to terminate the motion at ECF No. 77. The parties are ORDERED to appear at a

telephone conference on July 19, 2022, at 11:30 a.m. to schedule pretrial proceedings and trial.

At that time, the parties shall dial into the Court's dedicated teleconferencing line at (877) 402-

9757 and enter Access Code 7938632, followed by the pound (#) key.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

Dated: July 11, 2022
      New York, New York