UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

YUEFENG SHI,

                                        Plaintiff,                          19-CV-08502 (SN)

              -against-                                                     OPINION & ORDER

TL & CG INC., et al.,

                                        Defendants.

------------------------------------------------------------------X

SARAH NETBURN, United States Magistrate Judge:

        This matter proceeded to a trial by jury on May 17, 2023. On May 19, 2023, the jury

returned findings consistent with liability as to Defendants TL & CG Inc., Guoyong Chen, and

Guoqing Chen. See ECF 125 (Verdict Form). Following trial, the Court instructed the parties to

submit a proposed judgment and damages calculation, and on July 7, 2023, the Court directed the

parties to file a status letter regarding that submission. See ECF No. 147. In response—save for a

minor area of dispute which is addressed below—the parties stipulated to the computation of

damages Plaintiff had previously submitted in connection with his motion for default judgment

as to Defendant Jian Xiang Yang. See ECF Nos. 149, 132-4. Separately, Plaintiff filed a motion

for attorneys' fees, which Defendants opposed. See ECF Nos. 143, 152, 156. This Opinion and

Order addresses the amount of Plaintiff's damages as well as his entitlement to attorneys' fees.

                                        DISCUSSION

I.      Plaintiff's Entitlement to Damages for October and November 2018

        Under New York Labor Law (the "NYLL"), a plaintiff can recover for unpaid time at the

agreed-upon rate, even if it exceeds the minimum wage. See Kernes v. Global Structures, LLC,

No. 15-cv-659 (CM)(DF), 2016 WL 880199, at *3 (S.D.N.Y. Mar. 1, 2016). Section 191 of the

NYLL mandates that workers "be paid . . . in accordance with the agreed terms of employment." N.Y. Lab. Law §§ 191(1)(a)(i), 191(1)(d). NYLL makes it unlawful for an employer to require "a return, donation or contribution of any part or all of said employee's wages, salary, supplements, or other thing of value, upon the statement, representation, or understanding that failure to comply with such request or demand will prevent such employee from procuring or retaining employment." N.Y. Lab. Law § 198-b(2).

Before trial, the parties stipulated that Plaintiff was given a check for $1,500 per month, but disputed whether he was required to return some portion of that amount depending on how much he worked. At trial, Plaintiff testified that while he was *given* a $1,500.00 check each month, he was in fact *paid* at a rate of $45 per day. He also testified that he returned the entirety of his check in October 2018, but was credited for the few days he worked that month by having to "kick back" less of the check he received in November 2018.

It is undisputed that Plaintiff did not work from October 5, 2018, through November 20, 2018. The jury found that Plaintiff worked 3 days in early October 2018 and 9 days in late November 2018. The jury credited Plaintiff's testimony regarding having to "kick back" any portion of the $1,500 per month that exceeded $45 per day worked, and found that in October 2018 Plaintiff returned all $1,500, and in November 2018 he returned $960 (thus retaining $540 to "cover" all 12 days worked over both months at a rate of $45 per day).

Plaintiff argues that because "the parties stipulated that Plaintiff was employed at a salary of $1,500.00 per month," he is owed that amount for both months, regardless of how much he actually worked. See ECF No. 149 at 1.

Plaintiff misrepresents the nature of the parties' stipulation, which states that he "was given checks for $1,500.00 per month." ECF No. 114 at 5. Plaintiff's testimony and the jury's findings established that his rate of pay was in fact $45 per day, *not* $1,500 per month.

While this "kickback" scheme could be seen as fitting within § 198-b(2)'s "thing of value" language, Plaintiff provides no authority or argument to that effect. Moreover, it is unclear how Plaintiff's damages could be calculated to include pay for periods in which he did not work.

The issue of whether Plaintiff was truly "paid" the entirety of the $1,500 check he received each month is a question of fact that was answered by the jury in the negative. The jury found that Plaintiff was paid $45 per day, and so his damages are calculated based on the prevailing minimum wage assuming a $45 per day offset. Accordingly, Plaintiff is not entitled to any damages for the period from October 5, 2018, through November 20, 2018, during which he did not work. This represents a downward departure from the total damages number calculated by Plaintiff of $4,743.09, inclusive of liquidated damages and prejudgment interest.

## II.      Plaintiff's Standing to Seek Wage Theft Prevention Act ("WTPA") Penalties[1]

The Wage Theft Prevention Act requires employers to provide annual wage notices to employees hired after April 9, 2011, and to provide each employee with accurate wage statements each time wages are paid. See N.Y. Lab. Law §§ 195(1)(a), 195(3). Section 195(1) requires an employer to provide employees a notice at the time of hiring, containing, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; [and] allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances . . . ." N.Y. Lab. Law § 195(1)(a).

---

[1] The Court addressed this issue previously in its order denying Plaintiff's motion for summary judgment. See ECF No. 92 at 15-17.

Section 195(3) requires that employers provide employees with certain wage statement information "with every payment of wages." N.Y. Lab. Law § 195(3). An employer's failure to comply with either section of the law makes them liable for damages for each instance that the violations occurred or continued to occur. See N.Y. Lab. Law § 198(1-b) (stating that damages for wage notice violations under § 195(1) accumulate at a rate of $50 per day, not to exceed $5,000); § 198(1-d) (stating that damages for wage statement violations under § 195(3) accumulate at a rate of $50 per day, not to exceed $5,000).

Before trial, the parties stipulated that Plaintiff was paid $1,500 by check each month, see ECF No. 114 at 5, and the jury found that he was then required to return a portion of the check to Defendants, depending on how many days he worked that month. The parties also stipulated that Plaintiff was not provided with either type of notice required under sections 195(1)(a) and 195(3). See id., ECF No. 139 at 272:4-8. Accordingly, it is undisputed that Defendants failed to comply with NYLL § 195(1)(a) and § 195(3). Plaintiff nevertheless lacks standing to maintain these claims.

"Article III standing requires plaintiffs to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" Maddox v. Bank of N.Y. Mellon Tr. Co., N.A., 19 F.4th 58, 62 (2d Cir. 2021) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61 (1992)). To demonstrate an injury in fact, a plaintiff "must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical." Id. (quoting Strubel v. Comenity Bank, 842 F.3d 181, 188 (2d Cir. 2016)). While a so-called "informational injury" (i.e., failure to receive required information) can give rise to standing, see TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2214 (2021), the plaintiff must

allege "downstream consequences" from failing to receive that information that show an interest in using the information "beyond bringing [this] lawsuit," Harty v. W. Point Realty, Inc., 28 F.4th 435, 444 (2d Cir. 2022) (first quoting TransUnion, 141 S. Ct. at 2214, then Laufer v. Looper, 22 F.4th 871, 881 (10th Cir. 2022)).

In Freeland v. Findlay's Tall Timbers Distribution Ctr., LLC, one court added further nuance to the inquiry by observing that causation, rather than the presence of an injury in fact, was the real barrier to standing. See No. 22-cv-6415 (FPG), 2023 WL 4457911, at *13 (W.D.N.Y. July 11, 2023). There, the court reasoned that the plaintiff's injury was "fairly traceable" to his employer's alleged failure to pay him at the correct overtime rate, rather than their failure to provide accurate wage statements. Id. The court concluded the plaintiff lacked standing to bring WTPA claims because he had "merely allege[d] that Defendant's failure to provide Plaintiff with accurate wage statements misinformed Plaintiff about the correct overtime rate he was entitled to receive, and allowed Defendant to continue their unlawful pay scheme." Id. (internal quotation marks omitted).

Near the conclusion of the trial, Defendants raised Plaintiff's standing to assert WTPA claims. The Court set a June 2, 2023 deadline for Defendants to address this issue. On July 17, 2023, Defendants filed a letter challenging the WTPA claims. See ECF No. 154. Plaintiff responded two days letter, objecting to the unexcused delay and requesting that the Court disregard the letter. See ECF No. 155. While Plaintiff is entirely correct that Defendants' letter, filed nearly 45 days after the deadline and without any legitimate excuse or request for permission, is inappropriate, "federal courts have an independent obligation to resolve any issue about their subject matter jurisdiction *sua sponte*." Gross v. TransUnion, LLC, 607 F. Supp. 3d 269, 270 (E.D.N.Y. 2022) (citing Ross v. Bank of Am., N.A. (USA), 524 F.3d 217, 222 (2d Cir.

2008) (noting that district courts must consider the Supreme Court's teachings in <u>TransUnion</u> even if a defendant fails to raise it)).

While Plaintiff has not responded to this issue in writing, it was discussed during multiple colloquies at trial. <u>See, e.g.</u>, ECF No. 139 at 222:5-223:6. There, Plaintiff's counsel advanced the argument that "where the plaintiff has proved a concrete injury, in terms of nonpayment of wages, that was assisted or caused in part by the non-provision of notice, that's enough to satisfy Article III standing." <u>Id.</u> at 223:3-6. He continued: "I think the question of actual or concrete injury will be answered by the damages finding. If there is a finding of monetary damages, then there is an actual concrete injury." <u>Id.</u> at 224:22-25. Plaintiff cited to the Court <u>Mateer v. Peloton Interactive, Inc.</u>, No. 22-cv-740 (LGS), 2022 WL 2751871 (S.D.N.Y. July 14, 2022).

The Court has reviewed <u>Mateer</u> as well as a more recent case where the court found that plaintiff had pleaded standing for WTPA claims. <u>See</u> <u>Metcalf v. TransPerfect Translations Int'l, Inc.</u>, No. 19-cv-10104 (ER)(KHP), 2023 WL 2674743 (S.D.N.Y. Mar. 29, 2023). Both <u>Mateer</u> and <u>Metcalf</u>, however, are inapposite. The former involved a much more complex scenario including bonus payments and changing compensation plans. <u>See</u> <u>Mateer,</u> No. 22-cv-00740, ECF No. 33 ¶ 81. The latter involved a group of plaintiffs who, after being underpaid, were issued remedial payments by their employer that they were unable to properly assess due to also receiving inaccurate wage notices. <u>See</u> <u>Metcalf</u>, 2023 WL 2674743 at *6 (observing that the plaintiffs' "claim that they were in fact routinely provided with inaccurate and misleading information over the course of nine months, [] prevented them from pursuing the full amount of compensation to which they were entitled"). These cases also addressed the pleadings before a plaintiff had an obligation to prove her injury.

Here, in contrast, the consequences of Defendants' failure to provide proper wage notices are entirely speculative. See Freeland, 2023 WL 4457911, at *13 (characterizing the plaintiff's argument as saying that if "Defendant had given him an accurate wage statement, that statement would have informed him that he was not being paid the proper overtime rate. Enlightened by that knowledge, Plaintiff then would have demanded his required wages. Having made such a demand, Defendant would have then paid him his required wages, and Plaintiff would have avoided the injury" before concluding that "[s]uch a speculative chain of possibilities does not establish that Plaintiff's injury was fairly traceable to Defendant's alleged violations of NYLL § 195(3)." (internal quotation marks and citations omitted)).

Moreover, at trial, Plaintiff did not testify to any injury in fact sufficient to confer standing and has otherwise not demonstrated how his lack of notice resulted in an injury greater than Defendants' minimum wage, overtime, and spread-of-hours wage violations. Plaintiff has also not identified an informational injury with consequences beyond this lawsuit. Plaintiff was underpaid and not given proper wage notices, but has failed to demonstrate any causal link between the two.

Accordingly, Plaintiff does not have standing to sue in federal court to recover under NYLL wage notice and statement provisions. This represents a downward departure from the total damages number calculated by Plaintiff of $10,000.00.

## III.   Plaintiff's Motion for Attorneys' Fees

Under NYLL, a prevailing plaintiff is entitled to reasonable attorneys' fees and costs. N.Y. Lab. Law § 198(4). Courts determine the "presumptively reasonable fee" for an attorney's services by looking to "what a reasonable, paying client would be willing to pay," "who wishes to pay the least amount necessary to litigate the case effectively." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 184 (2d Cir. 2008). The "presumptively

reasonable fee" is the product of a reasonable hourly rate and the reasonable number of hours required by the case. See Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011).

Plaintiff requests a total of $111,864.50[2] in fees for 264.63 hours of attorney, paralegal, and staff work. Defendants argue that Plaintiff's requested attorneys' fees should be reduced for a variety of reasons.

### A.    Degree of Success

"A district court's assessment of the degree of success achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims." Barfield v. New York City Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008) (internal citation marks omitted). "Both the quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in determining the degree of success achieved." Id.

The jury found that Defendant Yi Nen Chen was not Plaintiff's employer; meaning that she cannot be liable to Plaintiff under NYLL. Defendants argue that because the employer status of TL & CG Inc. and Guoyong Chen was stipulated to, Plaintiff's "fees for the jury trial should therefore be adjusted downwards by 50% as he was only successful in half of his case."

This argument lacks merit. First, employer status was only one of many issues at trial. Second, it is simply untrue to claim that Plaintiff's case was anything less than completely successful. The findings of the jury were entirely consistent with Plaintiff's theory of the case and reflected that they credited his testimony nearly wholesale. Finally, Defendant Yi Nen Chen's lack of liability had no impact on the amount of Plaintiff's judgment, which he may seek to recover from any other Defendant.

---

[2] Plaintiff's counsel's declaration in support of the fee motion requests $98,388.50. See ECF No. 142 at 37. This number is incorrect because of a failure to properly calculate the total fees requested by Aaron Schweitzer. See id.

### B.     Contemporaneousness of Billing Records

Defendants cite to a 2021 opinion on a fees motion in which Plaintiff's counsel sought lower rates than those requested here. See Lu Wan v. YWL USA Inc., No. 18-cv-10334 (CS), 2021 WL 1905036 (S.D.N.Y. May 12, 2021). They reason that, because billing records extend back to this case's filing in September 2019, the fees sought here should be equal or lower to those of the 2021 case. They assert that the "only reasonable explanation for this suspicious discrepancy is that the records were not kept contemporaneously" before going on to accuse counsel of "deceptive" and "unethical" conduct that "should be sanctioned."

Defendants' premise is flawed. Plaintiff's counsel is entitled to current rates to compensate for the delay in payment from the time the work was performed to the time it is paid. Reiter v. MTA N.Y. City Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006) ("[In fee applications,] rates used by the court should be current rather than historic . . . .") (internal quotation marks omitted). In any event, the case cited was filed in November 2018, nearly a year before this one, and it is therefore possible that Plaintiff counsel's rates increased in the intervening ten months. Finally, Defendants cite to no authority and offer only speculation in support of their casual accusations of fraud.

### C.     Reasonable Rates

In determining reasonable fees for a particular case, courts rely on reasonable hourly rates prevailing in the same district for similar services provided by attorneys with comparable skill and experience. See Arbor Hill, 522 F.3d at 184; Sub-Zero, Inc. v. Sub Zero NY Refrigeration & Appliances Servs., Inc., No. 13-cv-02548 (KMW)(JLC), 2014 WL 1303434, at *8 (S.D.N.Y. Apr. 1, 2014) ("It is the fee movant's burden to establish the prevailing market rate.").

### 1.    John Troy and Aaron Schweitzer

Managing Attorney John Troy requests an hourly rate of $650.00 for 58.53 hours of work. Much has been written in this district about the inflated rates charged by John Troy and others at his firm. See YUAJIAN LIN, et al., v. LA VIE EN SCHEZUAN RESTAURANT CORP., et al., No. 15-cv-09507 (DF), 2020 WL 1819941, at *3 (S.D.N.Y. Apr. 9, 2020) (gathering cases commenting on Troy's lackluster performance and reducing his requested rate to between $300 and $375). While his conduct in this case has not caused the Court any specific consternation, Troy's requested rate still far exceeds the norm in this district, as well as what a reasonable client would be willing to pay for a garden-variety wage and hour case. See Lu Wan, 2021 WL 1905036, at *5 ("Courts in this District have recently determined that a reasonable rate for senior attorneys handling wage-and-hour cases, in this market, typically ranges from $300 to $400 per hour." (cleaned up)). But see, e.g., Ashkinazi v. Sapir, No. 02-cv-0002 (RCC)(MHD), 2005 WL 1123732, at *3 (S.D.N.Y. May 10, 2005) (awarding $425 per hour to a partner in a small firm specializing in employment law, with 26 years of experience). In addition, most of the work performed by Mr. Troy was associate-level work. Accordingly, his rate is reduced to $400.

Managing Associate Aaron Schweitzer requests an hourly rate of $400.00 for 161.21 hours of work. He graduated from law school in 2016 and has been with Troy Law since April of 2017. He was admitted to the New Jersey bar in November 2017, and has been practicing employment law for his entire legal career with extensive experience litigating wage and hour claims in federal court.

"[C]ourts in this Circuit have generally awarded Schweitzer an hourly rate of $100 or $150, consistent with his status as a relatively junior associate." YUAJIAN LIN, et al., 2020 WL 1819941, at *5. Defendants ask that Mr. Schweitzer's requested rate of $400 be reduced to $275 due to his "recent admission to the bar and lack of experience." Mr. Schweitzer may be in the

Spring of his legal career, but his admission nearly six years ago was hardly recent, and he does not lack for experience. Moreover, he tried this case to a jury alone and did so with skill and poise. Nonetheless, his requested rate also exceeds the norm in this district, and his rate is reduced to $350.

### 2.     Leanghour Lim and Tiffany Troy

Associate Leanghour Lim requests an hourly rate of $250 for 8.25 hours of work performed in January 2020. She was admitted to the New York bar in 2019. "Generally, rates in excess of $225.00 per hour are reserved for FLSA litigators with more than three years' experience." Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 28 (S.D.N.Y. 2015). Given the passage of time and the extremely low number of hours billed by Ms. Lim, the Court declines to reduce her rate.

Tiffany Troy is currently an associate, who, before being admitted to the bar, worked at the firm as a New York State Unified Court System-certified interpreter in Mandarin Chinese. She was admitted to the New York bar in 2021 and requests a rate of $250 for 2.5 hours of work and $150 for 3.59 hours of work.

While the higher rate is presumably meant to correspond to attorney work, her work billed at that rate was for translation services ("Translate Proposed Notice of Pendency and Consent to Sue Form from English to Chinese"). Moreover, it was billed on August 28, 2020, before Ms. Troy's admission to the bar. Accordingly, her work at the higher rate is reduced to her requested interpreter rate of $150.

"Courts in this District have awarded between $50 and $150 for interpreter or translator services . . . ." YUAJIAN LIN, et al., 2020 WL 1819941, at *6. Lacking any indication that Ms. Troy's work in this case was anything other than competent, the Court declines to reduce her rates below that number.

### 3. Preethi Kilaru

"Managing Clerk" Preethi Kilaru requests a rate of $200.00 for 30.55 hours of work but does not elaborate on the nature of her role. Other courts presented with similarly vague filings and identical rates by Troy Law have awarded Kilaru a rate of $70 for what is presumptively paralegal work. See YUAJIAN LIN, et al., 2020 WL 1819941, at *6. But cf, Lee v. New Kang Suh, Inc., No. 17-cv-9502 (PED), 2023 WL 2024805, at *2 (S.D.N.Y. Feb. 15, 2023) (finding a paralegal rate of $150 to be "reasonable and within prevailing rates"). The Court reduces Kilaru's rate to $150.

### C. Reasonable Hours

When evaluating whether claimed hours are reasonable, "the district court should exclude excessive, redundant[,] or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1997). An attorney who requests "court-ordered compensation . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).

Courts may apply an across-the-board percentage cut "as a practical means of trimming fat from a fee application." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (S.D.N.Y. 1998) (quoting New York Ass'n for Retarded Children v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983)). Such reductions may reflect the reviewing court's decision that "billing records were not sufficiently detailed, contain inappropriate block billing, and/or that matters were overstaffed." Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, No. 10-cv-2262 (DRH)(AYS), 2019 WL 2870721, at *7 (June 18, 2019), adopted, 2019 WL 2869150 (E.D.N.Y. July 3, 2019). A court need not "set forth item-by-item findings concerning what may be countless objections

to individual billing items." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).

Depending on the facts of a case, an across-the-board reduction can range from 15% to 50% or

more. See Simmonds v. New York City Dep't of Corr., No. 06-cv-5298 (NRB), 2008 WL

4303474, at *7-9 (S.D.N.Y. Sept. 16, 2008) (reducing a fee request by 55% to account for

duplicative work and ambiguities in the billing records); Matusick v. Erie County Water Auth.,

757 F.3d 31, 64 (2d Cir. 2014) (upholding 50% reduction in light of concerns regarding

"unspecified conferences, telephone calls, email correspondence, and reviews"); Francois v.

Mazer, 523 F. App'x 28, 29 (2d Cir. June 25, 2013) (affirming a 40% reduction in hours); Vista

Outdoor Inc. v. Reeves Family Tr., No. 16-cv-5766 (JSR), 2018 WL 3104631, at *7-9 (S.D.N.Y.

May 24, 2018) (excluding fees associated with the time entries of four attorneys and applying a

35% reduction for all remaining attorney hours); Beastie Boys et al. v. Monster Energy Co., 112

F. Supp. 3d 31, 57 (S.D.N.Y. 2015) ("Fee reductions around 30% are . . . common in this District

to reflect considerations of whether work performed was necessary, leanly staffed, or properly

billed.").

In support of their application, Plaintiff's attorneys have submitted a billing invoice. See

ECF No. 142-1. Defendants allege that these records contain numerous inconsistencies and

inflated entries. The Court has conducted its own thorough review of the time records produced

by Plaintiff's counsel and has identified a number of troubling entries, some of which are offered

as exemplars:

In September 2019, John Troy billed a combined 7.4 hours to draft and revise the

complaint. In an ordinary wage and hour case like this one, that work is more appropriately

performed by an associate, or at least billed at their lower rate. Similarly, on September 12, 2019,

John Troy billed 2.0 hours for filing forms with the Court, including a "consent to become a

party plaintiff" that does not appear on the docket for this single plaintiff case. Not only should

such filing tasks take minutes, not hours, they should be performed by a paralegal, not a

managing partner. (John Troy also billed .5 hours on August 5, 2019, to "[f]ile consent to

become a party plaintiff"; but this case was commenced on September 12, 2019). See also

11/14/2019 Entry (.5 to draft short adjournment request to Court); 1/02/2020 Entry (.5 hours to

review Judge Netburn's Individual Rules)

On January 20-21, 2020, Leanghour Lim billed a combined 7.5 hours for "IPTC," "Post

IPTC Memo," and "IPTC Prep." These entries are vaguely titled and wildly disproportionate to

the needs of such a perfunctory proceeding. They also predate the Initial Pretrial Conference,

which occurred on January 30, 2020, is not reflected in the billing invoice, and (per Court

records) lasted only 15 minutes.

In April 2020, Aaron Schweitzer billed 2 hours to draft an amended complaint. This

seems reasonable given that the purpose in amending was merely to add names for previously

unidentified Defendants. But John Troy also billed 3 hours for drafting the same complaint,

which is a patently unreasonable allocation of time for a managing partner.

On June 5 and June 22, 2023, Aaron Schweitzer billed a total of 12.94 hours to draft and

revise this motion for attorneys' fees. This is an unreasonable amount of time to spend drafting

such a motion, which largely consists of boilerplate. Moreover, Mr. Schweitzer's own fees are

miscalculated in that attached declaration, resulting in a fee request that is over $13,000 lower

than it ostensibly should have been.

Finally, on June 15, 2023, Aaron Schweitzer billed a modest 3.95 hours to draft a motion

for default judgment. The following day, John Troy billed 4.35 hours to review and finalize that

same motion. More relevant to this application, these Defendants, who did not default, are not

liable for fees incurred in seeking default judgment. Accordingly, counsels' hours are reduced by the time attributable to the drafting and filing of the default judgment motion: 3.95 for Mr. Schweitzer, 4.35 for Mr. Troy.

Given the numerous concerning entries identified by the Court, the hours requested by John Troy and Leanghour Lim are reduced by 20%. Because the Court concludes that 13 hours is excessive for a mostly boilerplate fee application, Aaron Schweitzer's hours are reduced by 5. Accordingly, the Court awards fees as follows: 43.34 hours at an hourly rate of $400 for John Troy, 152.26 hours at an hourly rate of $400 for Aaron Schweitzer, 6.09 hours at an hourly rate of $150 for Tiffany Troy, 6.6 hours at an hourly rate of $250 for Leanghour Lim, and 30.55 hours at an hourly rate of $150 for Preethi Kilaru.

### D.    Costs

"Fee awards include 'reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 478 (S.D.N.Y. 2009) (quoting LeBlanc–Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998)).

Plaintiff seeks costs in the amount of $4,684.00. As an initial matter, Plaintiff is not entitled to recover from these Defendants the $125 spent serving "John 02 Doe" who was later identified as Defendant Yang.

Defendants argue that Plaintiff is not entitled to costs or expenses for which he has not submitted documentary evidence but cite no controlling authority for that proposition. Although a best practice, similar arguments have been rejected by other courts in this district. See id. at 478 (rejecting "defendants' contention that costs must be supported by invoices or receipts, because no decision in this district has included such a requirement"); Marquez v. Erenler, Inc., No. 1:12-cv-8580-GHW, 2014 WL 5847441, at *4 (S.D.N.Y. Nov. 10, 2014) (same). Defendants

also cite no authority for their assertion that "plaintiff's attempt to recovery [sic] office supplies . . . must be denied," and it is not even clear what expenses they are referring to.

Accordingly, Plaintiff is awarded $4,559.00 in costs.

### E.  Total Award

Plaintiff's motion for attorneys' fees is GRANTED in part. Plaintiff is entitled to a total award of $82,332, consisting of $77,773 in attorneys' fees and $4,559 in costs.

## CONCLUSION

By separate Order of Judgment, the Court will set forth Plaintiff's damages. The Clerk of the Court is respectfully directed to terminate the gavels at ECF Nos. 141 and 154.

Because the Court must still address the pending motion for default judgment against Defendant Jian Xiang Yang, the Clerk of Court is requested not to close this case.

**SO ORDERED.**

SARAH NETBURN
United States Magistrate Judge

DATED:      September 8, 2023
            New York, New York